## SUPREME COURT.

### JANE QUIN agt. GEORGE B. SKINNER.

The testator, by his will, directed the payment of his debts, and then gave all his estate, real and personal, to his executor, by name, upon trust: 1st. To apply the whole net income thereof to the use of his mother and his wife, during the life of the former. 2d. To permit these *cestuis que trust* to use and occupy the farm upon which they resided, during the life of his mother; and, 3d. On the death of his mother to pay certain legacies.

He then, by the fifth clause of the will, devised as follows: "I do give, devise and bequeath, all the rest, residue and remainder of my said estate, to my wife, and to her heirs and assigns, forever, which is to be accepted and received in lieu of all dower, and right of dower; *and I do hereby authorize and empower my said executor to sell and convey my real estate at any time after the death of my said mother, and to pay over the proceeds thereof to my said wife :*"

*Held,* that neither by the terms of the *trust,* nor by any reasonable or just implication, could the payment of the debts be brought within it. It was the intention of the testator, that the executor should pay his debts in the exercise of the duty and power vested in him by law as executor, and not by virtue of any trust expressed in the will :

*Held,* also, that by the provisions of the will, previous to the fifth clause, the testator did not devise the estate to the executor to sell, and thereby vest in him a legal estate, but that by its terms, it was a simple creation of an *express trust,* limited to the payment of legacies, and the application of the income to the use of the wife and mother, during the life of the latter. When the purpose for which this trust was created ceased, the estate of the trustee ceased also.

In reference to the *fifth* clause of the will : held, that the power given to the executor to sell, was a *general power in trust,* and was manifestly repugnant to the direct and absolute devise to the wife. Such a power could not be upheld upon any application of the principle of equitable conversion, for there was no conceivable object to be subserved thereby. Upon any view, the object of this power could not be upheld as a lawful one.

*Second District General Term, Poughkeepsie, May,* 1867.

*Before* LOTT, J. F. BARNARD *and* GILBERT, *Justices.*

THE plaintiff, now the wife of Hugh R. Quin, was formerly the wife of Benjamin Rhead, of Yonkers, Westchester county. Rhead died in July, 1861, leaving a will containing substantially the following provisions : " *After all my lawful debts are paid and discharged,* I give and bequeath unto Joseph H. Palmer, my executor, hereinafter appointed, all my estate, real and personal, &c., in trust, for the following uses and purposes, viz : I direct my executor to pay and apply the whole net income of my estate, to the use and support of my mother and wife during the life of my mother, and to permit my wife and mother to use and occupy my farm as their home during the life of my mother. On the death of my mother, I order and direct my executor to pay certain legacies, amounting to $5,300. Fifth. *I do give, devise and bequeath, all the rest, residue and remainder of my said estate, to my wife, and to her heirs and assigns forever, which is to be accepted and received in lieu of all dower, and right of dower, and I do hereby authorize and empower my said executor to sell and convey my real estate, at any time after the death of my said mother, and to pay over the proceeds thereof to my said wife.*"

The will was admitted to probate July 22, 1861, and the executor named in it duly qualified as such.

The testator's mother died October 17, 1861. After that, the plaintiff continued in possession of the farm, claiming it as her own. In April, 1864, she commenced a suit against the executor, in this court, to remove him from office and compel him to account, and to restrain him from conveying any of the land; pending which suit, the executor executed and delivered to George B. Skinner, the defendant in this suit, a deed for about sixty-eight acres of the farm in question. Under this deed, Skinner in May, 1865, took forcible possession of the sixty eight acres, and removed the plaintiff therefrom. The plaintiff sued Skinner in trespass. In defense, Skinner set up title to himself in fee under the executor's deed.

The cause was tried before his Honor Judge Lott, in June, 1866, without a jury, and judgment was rendered for the defendant. The plaintiff appealed to the general term, where the appeal was argued by

F. N. Bangs, *for plaintiff.*
R. W. Van Pelt, *for defendant.*

*By the court,* Gilbert, J. If the conveyance from Mr. Palmer, the executor, to the defendant, vested the latter with the title and right of possession of the premises in question, these facts constitute a bar to this action. The question then is, whether upon a fair and just construction of the will of Benjamin Rhead, and a proper application of the law governing the case, the executor had an effectual power to make such conveyance. The will first provides for the payment of all the testator's debts, without specifying the manner whereby this is to be done, or creating any particular fund for that purpose. As the personal estate was ample to accomplish this, and leave a surplus to fall into the trust estate next created, it is evident that it was the intention of the testator that the executor should pay his debts in the exercise of the duty and power vested in him by law as executor, and not by virtue of any trust expressed in the will. After the payment of his debts, the testator gave all his

estate, real and personal, to Mr. Palmer, the executor, by
name, upon trust : 1. To apply the whole net income thereof
to the use of his mother and his wife, the plaintiff, during
the life of the former. 2. To permit these *cestuis que trust*
to use and occupy the farm, of which the premises in ques-
tion constitute the major part, during the life of his mother ;
and, 3. On the death of his mother, to pay certain legacies,
and to set apart and invest a fund for the ultimate discharge
of other legacies.

He then, by the fifth clause of the will, devises all the
rest and residue of his estate to the plaintiff, her heirs and
assigns, forever, in lieu of dower. Finally, he authorizes
and empowers his executor to sell and convey his real estate
at any time after the death of his mother, and pay over the
proceeds thereof to the plaintiff.

If the trust thus created did not comprehend the payment
of the testator's debts, it was completely executed before
the sale or conveyance to the defendant. The mother had
died, and the directions as to the legacies had been fulfilled.
The estate of Mr. Palmer, the executor, had ceased. For
by the express provision of the statute, when the purposes
for which an express trust shall have been created shall have
ceased, the estate of the trustee shall also cease. (1 *R. S.*
*130*, § 67.)

The court below has found that there were debts of the
testator unpaid, and that the personal estate actually in the
hands of the executor at the time the conveyance to the
defendant was made, was insufficient to discharge them, but
that the personal estate left by the testator, was more than
sufficient to pay all the debts and legacies. As before inti-
mated, we are of the opinion that neither by the terms of
the trust, nor by any reasonable or just implication, can the
payment of the debts be brought within it.

Having thus disposed of all the will preceding the fifth
clause, the question now arises, what is the legal effect of
that ? It first contains an absolute devise of all the residue
of the estate of the decedent to the plaintiff, in fee simple
absolute. It then gives the executor a power to sell, unac-

companied by any trust, except to pay over the proceeds to the plaintiff. Such a power cannot be upheld upon any application of the principle of equitable conversion, for there is no conceivable object to be subserved thereby. The doctrine of equitable conversion is never applied or enforced to defeat, but always to uphold and preserve estates. Besides, in any view of the case, the plaintiff had an election to take the land. (*Reed* agt. *Underhill,* 12 *Barb.* 113.) It is a general power in trust, and is manifestly repugnant to the direct and absolute devise to the plaintiff. She remained in possession after the death of her husband, the testator ; was in actual possession, claiming under the devise to her when the conveyance was made to the defendant, and is so still ; and she has never relinquished, but on the contrary, has always persistently asserted, her title as owner in fee.

"The general rule," says Ch. KENT, "is that a power shall not be exercised in derogation of a prior grant by the appointor." The principle of this rule applies here, notwithstanding the devise and power took effect the same instant. (*Duke of Marlborough* agt. *Earl Godolphin,* 1 *Eden,* 423 ; *Co. Lit.* 237, *a ; Lovett* agt. *Kingsland,* 44 *Barb.* 570, *affirmed Court of Appeals ;* 4 *Sandf. S. C. R.* 399 ; 4 *Kent's Com.* 319.) Until exercised, the substance of the power was a thing in *posse* rather than in *esse.* Before the actual execution of it, there was no estate or interest, legal or equitable, to support it. When executed, it *created* an estate, which if valid, swept away the prior vested estate of the plaintiff against her will, notwithstanding she only was to be benefited, if any benefit should accrue, and so far as I can see, for no good purpose whatsoever. It is perfectly well settled, and has been ever since the case of *Doe* agt. *Martin* (4 *T. R.* 39), that until the power is exercised, the estate remains vested in those who would take in default of appointment. The effect of an exercise of a power, is to divest the estate. (1 *R. S.* 129, § 59.) If the object of the power had been worthy, such as distribution, the protection of infants, or the like, of course the principle would not have been appli-

cable. The defendant's counsel seems to suppose that the testator devised his estate to the executor to sell, and that this vested the legal estate. We have seen that such is not the devise, but that by its terms, it is a simple creation of an express trust, limited to the payment of legacies, and the application of the income to the use of the wife and mother, during the life of the latter. When the purpose for which this trust was created ceased, the estate of the trustee ceased also. (1 *R. S. supra*; *Hawley* agt. *James*, 5 *Paige*, 458.) And where there is no object for the execution of a power in trust, it of course ceases. (4 *Cr. Digest*, 254; 1 *R. S.* 734, §§ 102, 121; *Hutchings* agt. *Baldwin*, 7 *Bosw.* 241; *Sharpsteene* agt. *Tillou*, 3 *Cow.* 660.) The rule referred to, therefore, has no application to the case ; first, because it is not a general devise to sell, but a trust, limited both as to the duration of the estate devised, and to the objects of the trust. A general devise to sell, at common law would pass the estate, but not under our statute. The latter requires that there shall not only be a general devise to the executor to sell, but that it shall also include an authority to receive the rents and profits. (1 *R. S.* 729, § 56; 4 *Kent's Com.* 321; *Germond* agt. *Jones*, 2 *Hill*, 573.)

Nor can the devise to the executor be made to operate in the way suggested, even in connection with the subsequent power to sell. For a devise that an executor may or shall sell lands, gives him only a naked power. (*Sug. Pow.* 8th ed. 112.) Thus in *Doe* agt. *Shotter* (8 *Ad. & El.* 905), there was a devise to a testator's wife during her life, and after her decease, "my will is, that my 'freehold shall then be sold by my executors in trust, and all the money be divided between all my children or their heirs, by my said executors :" Held, by the court of king's bench, Ld. Denman, Ch. J., delivering the 'opinion, that the executors took a power, not a legal estate. And if the power was auxiliary to the trust, it necessarily fell with it. But it is clear that the power to sell in the fifth clause, has no connection with the devise in the first clause. The latter is a trust, while the former requires the proceeds to be paid to the wife,

which would be in direct contravention of the trust. It is our duty to give effect to every part of the will if possible. If this cannot be done, then it is equally our duty to reject what is repugnant to the general intention, or to any obvious particular intention of the testator. (1 *R. S.* 748, § 2 ; *Parks* agt. *Parks*, 9 *Paige*, 116.) The analysis of the will, we think, has shown that it was not the intention of the testator to pass his interest to the executor. The general scheme manifested by the will, proves the same. The object of the testator was clear and simple, namely : 1. To have his debts immediately paid out of his personalty, and his farm kept for the use of his mother and wife ; and, 2. To have the few and simple objects of the trust fulfilled, after which, 3. To give the residue of his property to his wife. The power of sale ought not, upon any principle of law or justice, and cannot be allowed to operate to defeat this intention of the testator, so clearly manifested in the will.

We are also of opinion that effect could not be given to such a power, without contravening the policy of the law as expressed in the 47th and 49th sections of the statute of uses and trusts. (1 *R. S.* 727.) Section 47 provides, that every person, who by virtue of any grant, assignment or devise, now is, or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein, of the same quality and duration, and subject to the same conditions as his beneficial interest. And section 49 requires every disposition of lands to be made directly *to the beneficial owner*. These provisions have completely extirpated the class of formal trusts ; the object of the legislature being to prevent frauds. "Formal or passive trusts," say the revisers in their notes (3 *R. S.* 2d *ed.* 583), "separate the legal and equitable estate for no purpose that the law ought to sanction. They answer no end whatever but to facilitate fraud."

To uphold a naked power in trust like that in this case, would provide an easy and effectual method, whereby the very evils which the legislature intended to prevent by the

enactments cited, might be accomplished. Such a power is deemed, in equity, a trust for the benefit of the person who is to take the fruits of the exercise thereof. (*Hunt* agt. *Rousmaniere's Ad.* 8 *Wheat.* 207 ; 1 *R. S.* 734, § 96.) Upon what principle can courts of justice allow a man to do that indirectly, by means of a power in trust, which the statute does not expressly authorize him to do in that way, but does in terms, prohibit him from directly doing in any way ? (*See* 1 *R. S.* 732, § 74.) I have not been able to discover any. On the contrary, I think it is as much their duty scrupulously to guard against attempted violation of the policy of the law as declared in the statutes, as to annul acts which are expressly prohibited.

The terms of this power, it is true, are within the definition of a general power in trust. (1 *R. S.* 732, §§ 77, 94.) But the statute relative to powers, does not enumerate or define the objects for which powers may lawfully be created. There can be no doubt, however, that formal powers in trust may be created, which would be illegal and void. For example, a power, the execution of which should be directed after the lapse of a period beyond two lives in being, or a power to sell and convey to an alien. Such powers would be void, because the objects of them would be unlawful, notwithstanding they should be expressed in language bringing them within the definition of a power in trust. (*Sug. Pow. Cap.* 3, § 3 ; *Cap.* 8, § 1 ; *Beekman* agt. *Bonsor,* 23 *N. Y. R.* 317.) For the reason stated, we think the object of this power was not a lawful one. (*See Downing* agt. *Marshall,* 23 *N. Y. R.* 380 ; *Belmont* agt. *O'Brien,* 12 *Id.* 403 ; *N. Y. Dry Dock Company* agt. *Stillman,* 30 *Id.* 194.)

The case does not depend on the question whether the defendant is a *bona fide* purchaser. But in the eye of the law he is not. (*Williamson* agt. *Brown,* 15 *N. Y. R.* 354.)

The judgment must be reversed and a new trial granted, costs to abide the event.