In the Matter of the Application of the CITY OF NEW YORK in Relation to the Opening of One Hundred and Tenth Street.

PHILIP DIETRICH, Appellant; J. SERGEANT CRAM et al., as Trustees under the Will of HENRY A. CRAM, Deceased, Respondents.

(Submitted October 5, 1904; decided October 25, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1903, which affirmed an order of Special Term confirming

a report of commissioners of estimate and assessment; also appeal from an order of said Appellate Division, entered March 30, 1903, which reversed an order of Special Term confirming an earlier report of said commissioners.

*Truman II. Baldwin* for appellant.

*James A. Deering* for respondents.

*Per Curiam.* We think that the orders appealed from should be affirmed, with costs, on the opinion of HATCH, J., written on the first appeal to the Appellate Division and reported in 81 App. Div. Rep. 27.

CULLEN, Ch. J. (dissenting). The controversy in this case is over the apportionment between landlord and tenant of an award made in condemnation proceedings for certain lands of which Henry A. Cram was seized in his lifetime. The sole question presented is the validity of two leases for the period of twenty years made by the executors and trustees of Cram. If those leases were valid and effectual for the full demised term then the decisions below were wrong. If the leases were valid only during the life of Mr. Cram's widow, as the learned Appellate Division thought, then those decisions were right.

Mr. Cram was an eminent lawyer in the city of New York and had acquired considerable wealth for a professional man. At least, he must have regarded his estate as large, for he gave his wife an income of twenty thousand dollars a year, and in his instructions to his executors as to the investment of his property, he directs them not to invest more than a hundred thousand dollars in any single security. So far as material to an understanding of the question before us, the scheme of his will may be stated as follows: He gave all his residuary estate to his executors in trust to pay his widow twenty thousand dollars a year during life, the surplus income above said sum to be divided among his five children. On the death of the widow the estate was to be divided into five shares and one share held in trust for each of his children during his or her life, remainder to the issue of the child. The ninth clause of

the will reads as follows: "I authorize and empower my executors and trustees to rent or let from year to year or for *any term of years*, any of the real estate," etc. No power to sell the real estate is given by the will. By a codicil the testator recited the gifts, upon the 'death of his widow, in trust for the benefit of his two sons, John Sergeant Cram and Henry Spencer Cram, and directed that such share should be " conveyed, paid and assigned to the said " sons "absolutely and entirely without any restriction." Mr. Cram died April 9th, 1894, leaving a widow, who is still living, and five children him surviving. In his estate were three vacant lots on the northeast corner of Seventh avenue and One Hundred and Tenth street in the city of New York. On May 10th, 1897, J. Sergeant Cram, as sole surviving executor and trustee, leased two of these lots to the appellant for a period of twenty years at a rental which varied during different parts of the demised term, the lessee to pay all taxes. In July of the same year he made a similar lease of the third lot to the appellant. The commissioners of appraisement in their first report awarded Cram's executors forty thousand dollars for the fee of the land taken, and thirteen thousand five hundred dollars to the tenant, the appellant. The commissioners certified that in making that award they had treated the leases as valid for the whole demised term. The report was confirmed at Special Term but on appeal was reversed by the Appellate Division, which court held that the leases were effective only during the lifetime of the testator's widow. The matter having been referred back to the commissioners a second report was made in accordance with the law as laid down by the Appellate Division and the award to the tenant reduced to twenty-five hundred dollars, the leases being treated as effective only during the probable life of the widow as estimated by the annuity tables. This report was confirmed by the Special Term and by the Appellate Division, and from the orders made in those courts this appeal is taken.

We do not think it at all necessary to discuss what would be the inherent power of a trustee under a trust of the character found in this will, to lease the trust property, as we think the testator in express terms gave his executors and trustees ample

power to make the leases in question for the full demised periods. The land was vacant. That it was valuable appears from the award of the commissioners. The annual taxes on property worth forty thousand dollars must amount to a substantial sum. His widow has already survived the testator ten years, and has an expectation of life of several years more. Every one knows (no one better than the testator did) that vacant property in the city of New York cannot be let for any substantial rent unless for a long period of years sufficient to justify the tenant in placing improvements thereon. The will gave the executors no power of sale. Therefore, unless the lands were let for some long period they would prove a serious burden for the estate to carry. How much more of the testator's estate consisted of unimproved lands we do not know. Under these circumstances the testator, as already said, a lawyer of eminence and a shrewd business man, as shown by the magnitude of his estate, in express terms authorized his executors and trustees to "rent or let from year to year or for any term of years" any of his real estate. Can there be any question that this testator meant exactly what he said when he inserted the provision "any term of years?" Of course, the lease might be of so long a period as to be unreasonable and wasteful on its face, but there is nothing of that character in the leases before us. It is not suggested that if the trustee had the power to lease regardless of the duration of the widow's life the demised term was in any way unreasonable. Indeed, it may be asked who would take a lease of property in the city of New York and put valuable improvements on it if the tenant's occupancy was at any minute to be determined by the death of a lady over sixty years of age.

The conclusion reached by the learned Appellate Division seems to have been dictated by an application of the settled doctrine that an estate in fee given by a will cannot be cut down or limited by a subsequent clause unless the language employed is as clear and plain as that by which the devise was granted. We do not see how the testator could well have used any more clear or plain language than he did in the ninth clause authorizing his executors to lease "for any term of

years." In reality, however, the doctrine has no application whatever to a case of this kind. The fact that the remaindermen may ultimately take the land instead of vacant, occupied and leased for a substantial rental, and with possibly valuable improvements thereon cannot in any just sense of the term be said to impair, limit or qualify the devise to them. This question is not at all new. Though it has not arisen as to powers to lease, it has arisen as to powers of sale, which are so frequently found in a will. In *Quin* v. *Skinner* (49 Barb. 128) the testator gave his residuary estate to his wife and authorized his executors to sell his real estate at any time and pay over the proceeds to the wife. It was held by the late General Term of the second district that the power of sale was inconsistent with the devise. This decision involved titles in no small degree of uncertainty, but relief came when the case of *Kinnier* v. *Rogers* (42 N. Y. 531) was decided by this court. There it was said by Judge LOTT: " The power (general power of sale), instead of being ' repugnant to the previous devise to the children,' as was claimed by CLERKE, P. J., in the dissenting opinion in this case, on the authority of *Quin* v. *Skinner* (49 Barbour, p. 128), was consistent therewith. The devise was subject to the power, and until it was exercised the title to the land itself remained vested in the children, and after its exercise they took it in its substituted form. It was, nevertheless, to all intents and purposes, substantially the same property." Subsequently *Quin* v. *Skinner* itself was reversed by this court, the opinion being written by Judge GROVER (*Skinner* v. *Quin*, 43 N. Y. 99). The doctrine was reiterated in *Cussack* v. *Tweedy* (126 N. Y. 81), where Judge FINCH wrote: " We have held on the one hand that such a power of sale, when general and unlimited and unrestricted, does not become inconsistent with the devise of a vested estate in the same property, and on the other hand, that where the power is in terms restricted and limited in point of time to the continuance of the respective trusts, the ending of the trust ends also the power. It would be difficult to frame a power of sale more broad and unrestricted than the one before us." So we say of the present case, it would be difficult to frame a

power to lease more broad and unrestricted than the one before us.

The orders of the Appellate Division and Special Term should be reversed and the original report of the commissioners of estimate affirmed, with costs in all the courts.

GRAY, HAIGHT, VANN and WERNER, JJ., concur for affirmance; O'BRIEN and MARTIN, JJ., concur with CULLEN, Ch. J., for reversal.

Orders affirmed.