## BROOME ET ALS. vs. CURRY'S ADM'RS.

1. Those who will be entitled to the money arising from the sale of property may, if they are capable of making an election, elect to take the property itself in lieu of the money.

2. When money is given to one person for life with remainder to another, the remainderman cannot claim the benefit of contracts made by the tenant for life with the money.

3. A testator by will devised certain real and personal property to one of his daughters, for her sole and separate use, and at her death to be equally divided among those of her children who might then be living. He also bequeathed certain slaves to his wife during her life, and directed his executors to sell them at her death, and divide the money arising from the sale equally among his children, to be held by them as the property given to them was held. After the testator's death, by agreement between the children and their mother, the slaves were divided among the children, they agreeing to furnish their mother an annual support during her life. The slaves which were allotted to the said daughter on the division went into the possession of herself and her husband, and were afterwards sold by her husband. After her death, her children who were minors at the time of the division, brought trover against a remote purchaser from their father's vendee, for the recovery of the slaves. *It was held,*
    1. That the will of the testator only conferred upon the plaintiffs a a legal title, after their mother's death, to the sum of money which might have been allotted to her, as her share, on a sale of the slaves.
    2. That the division did not give them the legal title to the specific slaves which were allotted to their mother.

ERROR to the Circuit Court of Marengo. Tried before the Hon. Geo. D. Shortridge.

THIS was an action of trover brought by the plaintiffs in error against the defendants, for the conversion by their intestate of a negro man slave, alleged to be the property of the plaintiffs. The plaintiffs claimed under the will of their grandfather, which is set out in the opinion of the court at sufficient length. The court charged the jury, that if they believed the evidence they must find for the defendants, and verdict and judgment were accordingly rendered for the defendants.

SMITH, for plaintiffs in error :

1. Where property is ordered to be sold and the proceeds distributed, only a court of equity can consider it done and affix such converted character upon the actual property; indeed, it is called the doctrine of equitable conversion.—2 Lomax on Ex. 169. In this case, therefore, the doctrine cannot apply. Besides, this doctrine only relates to the transmissibility of the property, and no intervention of a court is necessary in the making an election, where one can be made, unless the elector be an infant, &c.—1 Jar. on Wills, 534 ; 2 Lomax on Ex. 169, § 14.

2. If the doctrine of constructive conversion could be applied, and the necessity of an election to change its character, still there was such an election by all parties in interest as was requisite, and all the parties making it were competent. The females, as to the property, had a right to act as *femes sole*, their property being to their sole and separate use, and their husbands joined with them in the election. Mrs. Bird's children were the only minors, and their mother having died before the termination of the widow's life estate, was not of course then a survivor, and the children taking through her only therefore had no interest whatever.—Burnside v. Wall, 9 B. Mon. 318-29.

3. The life estate of the widow was terminated as effectually by the division, under the circumstances, as it could have been by her death, and it was so terminated for the benefit of all interested.—Ib.

4. The only parties interested in this doctrine of conversion, are the executor of the testator and the legatees under the will; and the most the defendant can do, if he were permitted, would

be to set up an outstanding title in the testator's executor, now extinguished by lapse of time. But he will not be permitted to do this, for as to these matters he is a perfect stranger and will not be heard.—9 Por. 475.

5. Again, the defendants claim through the same common origin (Dorcas Broome) with the plaintiffs, and their proof shows it, and until it appears they claim some other way, they cannot deny the title of that common origin, and no title ever appears to have been in her, except one which vests title in the plaintiffs.

6. The will gives a life estate in the property in those children surviving at the termination of the life estate of the widow, and a contingent remainder in their children living at her death. The possession of the mother was therefore the possession of the plaintiffs, her children, to sustain the title of plaintiffs against the defendant's intestate, who, after the life estate of the mother and his refusal to deliver, was a wrong-doer merely.—13 Ala. 255. The former suit (Broome v. King, 10 Ala. 819,) treats the slave itself as the actual bequest, under the operation of the circumstances.

7. Curry, the defendant's intestate, bought at his own administration sale of Joseph Pack, jr.'s estate, and of course only bought Pack's title, which his administrator, Curry, was bound to know. Now Pack was one of the legatees assenting to the division and receiving his portion of the property under the will; it does not therefore lie in him nor in his vendee to object to such division.

8. But if no election was made, then it was the mere investment of Dorcas of the money belonging to the plaintiffs after her death, in specific property, and in respect to the children's remainder she stood as trustee for them, and the property will be held for the benefit of the *cestuis que trust,* and no court will deprive them of ratifying the investment, as they have done by this suit. They will rather guard the property for them.—6 Ala. 404; 4 Por. 27; 9 B. Mon. 320.

BYRD, *contra:*

1. The plaintiffs show no legal title and are not therefore entitled to recover in this action.—9 B. Mon. 421; Jar. on Wills, chap. "Election."

2. The will of Pack, under which the plaintiffs claim, directs

that his property be sold and the money be divided among his children, giving his daughters a life estate in their share and remainder to their children. Under these facts, the remainder-men have no legal title to the property.—See same authorities.

DARGAN, C. J.—The first and the material inquiry in this case is, does the evidence show a *legal* title to the slave in the plaintiffs. By the will of Joseph Pack, sen., certain property, real and personal, was given to Dorcas Broome, a daughter of the testator, for life, for her sole and separate use, and after her death to be equally divided amongst the children that should be *alive at her death.* The testator, after making provision for his other children, bequeathed the residue of his property to his wife during her life, and directed his executors to sell the same at her death and divide the money arising from such sale equally amongst his children, to be held by them as the property respectively given them by the will was to be held. The residue of the testator's estate, given to his wife for life, consisted principally of slaves, one of which was Tom, the slave in controversy. Shortly after the death of the testator, owing to the old age of his widow, the slaves were divided amongst the children, they stipulating to pay the widow, their mother, a certain annual sum during her life. Tom, the slave sued for, with some others, upon the division, fell to the lot of Dorcas Broome. He went into her possession, or into the possession of her husband, who after retaining him in possession for a year or two, sold him. He was again sold and finally purchased by the defendant's intestate. At the time of the division alluded to, some of the plaintiffs were not born, and none of them of age. Mrs. Broome is now dead, and the plaintiffs, except James C. Bradford, who married her daughter, are her children. These are the facts upon which arises the question, have the plaintiffs shown a legal title to the slave? We cannot hesitate to say that they have not. By the will of the testator, they can make claim to nothing except to the sum of money that should or would have been allotted to their mother, upon the sale of that portion of the testator's estate given to his wife for life; but through this will they obtained *no legal title* to any part or portion of the property itself; nor can the division of the slaves amongst the children of the testator give to the plaintiffs a legal title to the specific slaves

Broome et als. v. Curry's Adm'rs.

allotted to their mother. We do not intend to deny the general rule, that those who will be entitled to the money upon the sale of property, may, if they are capable of making the election, elect to take the property itself in lieu of the money; and I admit that if the property be personal, a party coming into posession of his share would have a legal title to it. But I look upon the division of the slaves as giving the plaintiffs no more or other right than if their mother had received her portion of the money, and then purchased slaves with it; and in such a case, it is certain that the plaintiffs would not be *legally entitled* to the slaves so purchased. Indeed, it may be well doubted whether they could claim even an equitable title to the slaves, in the case we have supposed; for I do not see why the tenant for life of money, who is entitled to its possession, may not use it as he sees fit in the purchase of property, unless those in remainder restrain him on the ground of danger to their ulterior interest; nor can I conceive how the remaindermen can, even in equity, claim the benefit of his contracts as their own. The tenant for life is entitled to the use of the money; and if he purchases property with it, to give the remaindermen the specific property and not the money would be to give them, to some extent, the use and benefit of the money during the life of the tenant for life. In the case of Black v. Ray, 1 Dev. & Bat. Eq. 443, one having a life-time estate in slaves sold them, and with the proceeds bought others; those in remainder, after the death of the tenant for life, filed their bill to recover the slaves so purchased, on the ground that they were purchased with the money to which they were entitled after the death of the tenant for life. The Supreme Court of North Carolina denied their title to the specific property, but allowed them a lien on the slaves to the extent of the money to which they were entitled, in consequence of the sale of the slaves by the tenant for life. This case shows that those in remainder cannot claim the benefit of contracts made by the tenant for life, with money to which he was entitled until his death. The case of Palmer v. Wakefield, 3 Beav. 227, in effect holds the same doctrine.

It is not, however, necessary to decide, in this case, whether the plaintiffs could claim the specific property by bill in equity, or a lien upon it, in the hands of a *bona fide* purchaser, for the suit is at law, and they must show a legal title, and this we

are satisfied they have not done. They only show a legal title under the will of their grandfather to a sum of money, after the death of their mother; this is a legal debt against her estate, and if they would pursue property purchased with the money, or received in lieu of it, they must resort to a court of equity. They cannot be permitted to recover the property itself at law.

This view shows that there is no error in the charge of the court, and the judgment is consequently affirmed.