## Mary A. Mandlebaum v. Donald McDonell and others.

*Wills : Executors : Power of sale : Title : Estate : Heirs: Devisees.* The will in this case, which provides for sales of the real property and for a distribution of the proceeds by the executors, without stating who shall make the sales, but clearly expressing the intent to deprive the devisees to whom the proceeds are. to be paid from making them, is held to confer the power of sale, as a naked power, without estate or interest, upon the executors, but not to vest any estate or title in them : and under such a will the title must have vested in the meantime either in the heirs at law of the devisor, or in the devisees named in the will.

*Wills : Devises : Rents and profits : Life estate.* A devise of the rents, profits and income of lands to the widow during her life, so long as she should remain a widow, is construed to convey an estate for life on condition that she did not marry.

*Wills : Devises : Remainder in fee : Proceeds of sales of lands.* A devise of the proceeds of lands when sold, which is absolute and exclusive, with no provision whereby any other person should in any event have any right or interest therein, and subject only to a life estate in the widow of the devisor, is held to be in legal effect a devise of the remainder in fee.

Under such a devise, where the bare power of sale is given to the executors merely to sell the lands and distribute the proceeds, all the devisees collectively may, before the power of sale is executed, elect to take the land instead of the proceeds, according to their respective interests in the proceeds, and thus prevent a sale ; and each devisee may ordinarily so elect as to his own share; and this, even though the will should expressly forbid such election.

*Devises : Vested remainder in fee : Restriction upon the right of alienation.* Under such a devise to the devisees directly, which is absolute and without condition or limitation, and conveys an absolute vested remainder in fee, so that no one holds any adverse interest, a restriction upon the right of the devisees to sell their interest or estate during a period named, is held to be invalid. The question of the validity of such a restriction upon the alienation of a remainder which is subject to an intervening life estate, is precisely the same as it would be in case of a devise of the absolute fee.

*Legal obligation : Parties : Restrictions upon alienation.* A legal obligation always involves the idea not only of a party upon whom it rests, but also of another party in whose favor or for whose interest or benefit it is imposed, and who, therefore, has the right to call for its enforcement; and a restriction upon the right of alienation by devisees, where the observance or violation of the restriction can neither promote nor prejudice any interest but their own, imposes no legal obligation which courts can enforce.

*Maxims.* The maxim, "*modus et conventio vincunt legem*," considered and held to be more limited in its application to real estate than to personal property and rights, and to be very materially limited, even as to the latter, but still more so as to the former, by two other maxims, viz.: "*Conventio privatorum non potest publico juri derogare*," and "*fortior et potentior est dispositio legis quam hominis;*" and examples in illustration of the application of these maxims, both to estates in tail and to estates in fee simple, are given.

*Alienation : Condition.* Whether a condition imposed upon an estate in fee, against alienation to certain specified persons, or to any but certain specified persons, could be sustained in this state :—*Quære ?*

MANDLEBAUM *v.* McDONELL.

*Restrictions upon the right of alienation.* In this state the question of the right of a grantor or devisor to impose conditions or restrictions upon the right of alienation of vested estates in fee stands upon common-law reasons; and at the common law a condition or restriction which would suspend all power of alienation of such an estate, even for a single day, is inconsistent with the estate granted, unreasonable and void.

*Authorities reviewed: Large's case: Right of alienation.* The authorities upon the subject of restrictions upon the right of alienation, and especially *Large's case,* 2 *Leonard, 82*; 3 *Leonard, 182,* reviewed; and the doctrine announced by some text writers and annotators, and supported by some *dicta* by judges, and perhaps by one or two American decisions, and which seems by all such to be referred finally to *Large's case,* that a restriction suspending all power of alienation of a vested estate in fee for a reasonable time only is valid, is held not to be sustained by that decision, or by any other known English decision since the statute *quia emptores.*

*Heard January 31. Decided January 29.*

Appeal in Chancery from Superior Court of Detroit.

This was a bill brought by complainant in the superior court for the city of Detroit to quiet her title to certain lots in the city of Detroit, on the north side of Fort street, known as lots 11 and 12 upon the Military Reserve, so called.

The bill sets forth all the facts, and they are not denied by any of the defendants, all but two of whom demur to the bill, one, who is a minor, answering by guardian, submitting the matter to the court, and one of them, Mr. Hodson, disclaiming all interest.

The superior court granted the decree for a release to complainant as prayed by the bill.

John McDonell died seized of the premises in October, 1846, leaving a widow, Ann McDonell, and the following named heirs, who, but for the will in question, would have inherited all his property, subject to the rights of the widow, viz.: three sons, Donald S., Alexander J., and Charles S., and one grandson, Francis McDonell Breckenridge (then a minor).

But the deceased left a will dated February 28, 1845, by which, among many other devises and bequests to the same and other parties, *first,* he gave to his wife (the said Ann McDonell) "all the rents and profits of my whole estate

during her life-time, that is to say, if she so long continue to be my widow, on which condition she is to receive and enjoy all revenues arising from the rents of my estate or other property, so long as any portion of the same remains unsold ; and no portion thereof is to be sold but in accord- ance with the directions of this, my will." Then (by the fourth item of his will) he declares : " Subject also to the like conditions and reservations hereinafter mentioned, I give and bequeath to Charles S. McDonell, Donald S. McDonell, Alexander J. McDonell, Francis McDonell Breckenridge " (who were the whole of his heirs at law), "Ellen Daily, and Ann Baxter,—that is to say, my three sons, grandson, my adopted daughter, and Goddaughter,—the net proceeds of the following parcels of property, when the same shall be sold according to the directions of this, my will " (then describ- ing several pieces of real estate, among which are the prem- ises in question, and proceeding as follows) : " when the same shall have been sold in conformity to the directions of this, my will, the said net proceeds shall be divided share and share alike between my three sons, grandson, and adopted daughter " (again naming them), " and out of every one hundred and five dollars so derived and paid to them as above, the five dollars out of such amount shall be paid to my Goddaughter, Ann Baxter. The said Ellen Daily and Ann Baxter, to entitle each of them to the bequests herein specified, are to remain with, and take care of my wife, and she is to receive the said bequests for their respective benefits, so soon as any of the installments for which any part of said property is sold, shall be paid to and by my executors,—that is, to remain and take care of her so long as any of them remain unmarried ; the rents derived from any portions of my estate and the moneys arising and paid over to my execu- tors from any sales of property, they are required and directed to pay the same forthwith to my several devisees in accordance with the directions and the true intent and meaning of this, my will."

As to the motives which have guided him in making his will, the testator makes this declaration: "If my children were only prudent, wise and industrious, I would altogether prefer not to sell my property which I hold in the city of Detroit. I would prefer it should not be sold, but rather saved, that the one might be a protection to the other; indeed, if matters were different from what they are, I would prefer to have made no will. I have made this, my will, to prevent knaves and sharpers from filching my children out of the means acquired by my industry, designed for their comfort and happiness." In reference to the devise of this property, the will further declares, "the same to remain unsold until Francis McDonell Breckenridge shall be twenty-five years of age, or until twenty-one years from the date hereof, in case of his death, and not then to be sold in case my wife is still living, and that she remains my widow, and until after her death." * * * * "All the above designated property, real and personal, I do hereby give and bequeath, upon the express condition as in this will specified, to which my several devisees herein named are required to consent under their respective signatures, with the exception of Francis McDonell Breckenridge, a minor, in writing, before any such devisees shall be entitled to any portion of the bequest made to him or her, as the case may be; that it shall not be competent for any of my devisees hereinbefore named to either dispose of, alienate, mortgage, barter, pledge or transfer any portion of the real estate or any of the proceeds thereof, either directly or indirectly, upon any pretext whatever, before the same shall be actually paid by my executors to such devisees at the respective times and periods that any of the proceeds of my estate shall be paid into their hands. All documents or instruments whatever, executed by any of my devisees, which shall be in contravention of the true intent and meaning of this, my last will and testament, shall be deemed and be taken to be null and void

29 MICH.—11.

and of no effect whatever. And it is my further intention that no proceedings whatever, either in a court of law or chancery, shall in any way impair or deprive any of my devisees of any of the bequests in this will made, before the same is actually paid into the hands of such devisees; inasmuch as any such bequest is only given on the condition in this will expressed. And it is my further will that in case my devisees, or a majority of them, should be so disposed at the expiration of the time that the property in the city of Detroit is designed to be sold, they need not sell the same unless their embarrassments in debt require them so to do; but this is to remain wholly optional with the majority of those devisees, or their heirs or guardians then living, to do at that time, when it shall arrive, what may seem to them for the best."

The will appoints as his executors his wife, Ann McDonell, the Catholic bishop of Detroit for the time being, Elon Farnsworth, Benjamin F. H. Witherell, and Charles Moran, none of whom qualified or accepted the position, except Mrs. McDonell and Witherell, by whom the will was duly proved and allowed in the probate court in November, 1846. Ann Baxter did not continue to live with the widow, and forfeited all right to the bequest given to her upon that condition.

Benjamin F. H. Witherell (one of the two executors who accepted and acted as such) died in 1867, and Ann McDonell, the other executor, died in February, 1873, having never again married after the death of the testator. Neither of them ever assumed to sell any lot or parcel of the land mentioned in the will, or ever did any act whatever affecting the title thereto.

But on the 10th of November, 1853 (during the life of the widow), said Donald McDonell, Alexander J. McDonell, with his wife, and Charles S. McDonell, with his wife, executed deeds (of that date) purporting each of them to convey to Oliver M. Hyde, his heirs and assigns, the undivided

one-fourth of the premises in question (making three-fourths), subject to the life interest of said Ann McDonell in the same.   On the 18th day of November, 1859, said Francis Mc-Donell Breckenridge, with his wife, executed a deed to William Gray, his heirs and assigns, purporting to convey all their and each of their right, title and interest in said premises, either as heirs of said John McDonell, or his devisees under his will.

On the 7th of December, 1870, the said Ellen Daily, being then married, by her marital name of Ellen Smith, by her deed of that date, sold and conveyed to Mrs. Mary Gray, her heirs and assigns, all her right, title and interest in said premises.

By several mesne conveyances, all the right, title and interest conveyed by the several foregoing deeds were duly conveyed to and vested in the complainant before the filing of this bill.

And on the 7th day of December, 1871, the said Ann McDonell, the widow of the devisor, by her deed of that date, conveyed to the complainant all her right and interest in the said premises.

These conveyances have placed the whole title of the premises in the complainant, if it was competent for the several devisees and for the widow under the provisions and contrary to the restrictions contained in the will, to convey their several interests, under the circumstances stated, prior to any sale by the executors before the death of the widow.

In May, 1873, but after the death of Mrs. Ann McDonell, the defendant Nicholson was appointed administrator with the will annexed, of the estate, and now claims that all the foregoing deeds are void for want of power in the devisees to convey, and that he has the right now to proceed and sell the premises for the benefit of the devisees.

*G. V. N. Lothrop, Ashley Pond,* and *S. T. Douglass* for the complainant.

*C. A. Kent* and *C. I. Walker,* for defendants.

CHRISTIANCY, J.

We are first to inquire what estate, interests or powers under the provisions of the will, vested, *first,* in the executors; *second,* in the widow; and, *third,* in the other devisees.

*First.* As to the executors, it is quite clear from the provisions relating to this point and the entire will, that the lands were not devised to the executors as trustees, and that no estate or title vested or was intended to vest in them, as trustees or otherwise. But though they are not especially authorized or directed as executors to sell, yet, as the will provides that the property is to be sold, and the proceeds are to be distributed by them, without stating by whom the sale is to be made, and it is clear this power of selling and distributing proceeds was not intended to be exercised by the devisees to whom the proceeds were to be paid, it is sufficiently obvious that the devisor intended this power to be exercised by the executors. This, however, was but a naked power, without estate or interest, and as the title to the estate in the land must have gone somewhere, until it should be defeated or transferred by a proper and valid exercise of the power, it must have vested either in the heirs at law of the devisor, or in the devisees named in the will.

*Second.* It is also clear that an estate for life in these premises was given to the widow on condition (which has been performed) that she did not marry; for though in form the devise to her was only of the rents, profits and income of the lands, yet this is equivalent to a devise of an estate for life in the land itself. See *2 Washb. on R. P. (3d ed.), p. 450, sec. 30,* and authorities there cited. And as to her life interest, I am inclined to think, by a fair construction of the will, no restraint was intended to be imposed upon her right as an individual to sell that interest. But this point has become immaterial by her death, which terminated her interest, if not properly conveyed.

*Third.* But this leaves the fee of the land subject to

the widow's life estate, in other words, the remainder in fee, which must have vested at once in the heirs at law,— the three sons and the grand-son of the testator,—as undisposed of by the will, or in the devisees.

This devise, it is true, is not in form a devise of the lands themselves, but of the proceeds when sold.   If, however, there is any thing in the will made perfectly clear and placed beyond all possible doubt, it is that the proceeds should be the absolute and exclusive property of the devisees (except the interest of Ellen Daily and Ann Baxter might be defeated by a condition subsequent), and that no other person should, in any event, have any right or interest in them under any circumstances.   Not even the violation by them of the provisions restricting their power of sale, was to defeat or affect their interest, forfeit it to the heirs, or pass it over to others; but all conveyances of that kind, it is declared, shall be void ; and the testator even goes so far as to declare it to be his intention " that no proceedings whatever, either in a court of law or chancery, shall in any way impair or deprive any of (his) devisees of any of the bequests in this will made, before the same is actually paid into the hands of such devisees."   It is very clear, therefore, that though the word, "condition," is used in connection with this devise, the devise is not made upon the condition that it shall be forfeited on a sale, or an attempted sale, and that the interest of the devisees shall terminate, or go to the heirs, nor is it limited over to any other person upon a breach of the restriction upon the power of sale, but that the devise and the interest intended to pass by it were to be absolute and unconditional in this respect, whether the restriction should be observed or violated.   And as to the agreement to these restrictions, which the devisees were required to sign, supposing it to have been signed, who were the parties whose interests were to be affected by it?   Who had a right to insist upon its performance, or to any remedy for its breach ?   Clearly none but the devisees themselves, who might, therefore,

mutually release, abandon and put an end to it, at least with the unanimous consent of all, which they did by their conveyances, if these were in other respects valid. It was, in fact, very frankly admitted by the counsel for the defendants that the interest given by the will to these devisees was a present vested interest, though it was insisted that it was not properly an interest in the land, but the proceeds; that these proceeds could only be obtained through the execution by the executors of the power of sale.

But when such a bare power of sale is given to the executors merely to sell the lands for the purpose of paying over the proceeds to devisees, whose right under the will to such proceeds is an absolute and vested right, we understand the law to be settled, not only that all such devisees may collectively, before the power of sale is executed, elect to take the land, instead of the proceeds, according to their respective interests in the latter, and thus prevent a sale, but that each of them may ordinarily so elect as to his own share. See *Reed v. Underhill, 12 Barb., 113; Kirkman v. Miles, 13 Ves., 338; Craig v. Leslie, 3 Wheat., 563; Tazewell v. Smith's Admrs., 1 Rand. (Vir.), 313; Burr v. Sim, 1 Whart., 252; Broome v. Curry's Admrs., 19 Ala., 805; Quin v. Skinner, 49 Barb., 132; Story's Eq. Jur., sec. 793.* This is the effect which the law itself gives to such a devise,—which gives a vested interest in the whole proceeds to the devisees,—whether the will provides for such an election or not, and even though it should expressly forbid the election. Whether it would be competent to make a devise upon the express *condition* that the proceeds alone should be received or the devise to be forfeited, or the property or proceeds go over to another in case of a refusal to accept the proceeds, or of claiming the land, we need not consider, as this devise is not made dependent upon any such condition. And though the language makes it in form a devise of the proceeds instead of the land, yet so far from providing in reference to this

devise or that of other property in Detroit, against the election (as it may be said the testator has undertaken to do in reference to the devise of other portions of property which the executors might sell at any time), the last provision of the will in reference to the property in Detroit seems to me to recognize the right of the devisees to elect to hold the land instead of the proceeds, and dispense with a sale, as soon as the time should arrive, when, by the will, the executors were to be authorized to sell, viz.: as appears in a former provision in reference to this particular devise, upon Breckenridge reaching the age of twenty-five and the death of the testator's widow, etc.; thus recognizing the right to elect at that time, but undertaking to restrict the right until that time.

We must therefore hold that the devise to the widow was of a life estate (should she remain unmarried), and that to the other devisees it was a devise of the fee subject to the life estate; in other words, the remainder in fee. And though they might at their election permit or prevent a sale by the executors for their benefit and on their account, it was a present vested remainder in fee, or the entire estate in fee, subject to the life estate of the widow.

Now, as to the restriction against alienation, while there is, as to the particular lands here in question, a direct and express restriction upon the executors not to sell it until Breckenridge should reach the age of twenty-five, or during the life of the widow if she remained unmarried, the restriction upon the devisees not to sell this property is not so direct and express. It is clear, however, and admitted, that the result of all the provisions taken together is a sufficiently clear expression of intention to forbid and restrict the devisees from selling the property or its proceeds, in other words, the estate devised so far as these lands are in question, until the period last above mentioned. The estate devised being an absolute vested estate in fee, the only remaining question is whether such a restriction of the right of the devisees to sell such an estate is valid.

This is the main question in the case and was very prop-
erly so treated and discussed by the counsel on both sides.
And before proceeding to determine this question, it may,
for the sake of clearness and to avoid the confusion which
might arise from confounding questions which might other-
wise seem analogous, be as important to point out what the
question does not involve, as what it does.    It does not,
then, involve the question whether a restraint upon the
sale of this property for an equal length of time might not
have been rendered legally effective by the conveyance of
the legal title to trustees, in trust for the benefit of these
devisees, according to instructions as to time of sale, which
might have been inserted in the will ; in which case the
validity of the restrictions as to time would depend mainly
upon the question whether the period exceeded that allowed
by the rule against perpetuities.    Nor does the question
involve an inquiry how far a somewhat similar object might
have been accomplished by making this estate in fee in
these devisees defeasible, upon the condition of their exe-
cuting, before a certain period, a conveyance to certain per-
sons, or to any other than certain persons, or to any party
whatever, or of their becoming bankrupt, or allowing a sale
upon execution, or permitting a judgment to become a lien,
or upon condition of using the property in some particular
way, the property being limited over to another, or to be
forfeited and revert on breach of the condition.    In these
cases there would be some party besides these devisees inter-
ested in the observance of the condition, with a right to
take advantage of the breach, viz.: the heirs of the devisor,
or the person to whom the property was limited over.   It
is quite possible that many restrictions or qualifications
upon the right of devisees or grantees may be made effect-
ual by making the estate itself dependent upon such con-
dition, to which it could not be subjected if the estate given
is absolute, as it is admitted to be here.

Nor does the fact that, in the case of an executory
devise, or in that of a contingent remainder, or any other

interest *not vested*, a restriction upon the power of the devisees to sell before it shall become vested in interest, would be good, in any manner tend to sustain such a restriction upon a vested estate in fee.

. This devise is not made to trustees for the benefit of the devisees, but directly to the devisees themselves. The estate devised is not a conditional one to be forfeited or to revert to the heirs of the testator, or to go over to others on a breach of the restrictions, nor one which is to vest at some future day, or upon the happening of some future event, but an absolute vested remainder or estate in fee, and though not to come into actual enjoyment until the death of the widow, to whom a life estate is given, it is just as much vested and the devisees have just as much right to sell the interest or estate devised as if there had been no intervening estate for life. And the question of the validity of the restriction is, in my view, precisely the same in all its legal aspects, as if no life estate had been given to the widow, but the whole had been given in fee directly to these devisees, as an absolute estate in fee and in possession, with the same provisions restricting the power of sale. My first difficulty in holding the devisees or their estate bound by the restriction is this: a legal obligation always involves the idea, not only of a party upon whom it rests, but of another party in whose favor, or for whose interest or benefit it is imposed, and who, therefore, has the right to call for its enforcement.

. To give vitality and force to the current of a legal obligation, it requires, like the galvanic current, a battery with two opposite poles, between which the current is to pass and the force to operate. A circuit formed upon only one remains quiescent. The force of gravitation itself would cease to act, if not to exist, without at least two bodies (or particles) between which it could be exerted. And it is not easy to see how this restriction can impose any legal obligation upon the devisees or limit their power over the estate, when the observance or violation of the

restriction can neither promote nor prejudice any interest but their own; and it has not been claimed that any other interest could be affected here.    Let us test this a little further by a few analytical questions.    In whose behalf, for whose interest, is the restriction imposed?    Is it not solely for that of the devisees themselves?    And who has a right to enforce it or complain of its breach?    What species of legal tie or obligation is that which attaches only at one end, and, ending where it begins, operates only in behalf of the very party upon whom, or on whose property it is imposed, making him at the same time the obligor and obligee?    May not a party in whose behalf an obligation exists forego or release its performance?    If not, then at whose instance will the court compel him to insist upon its performance?    It must be admitted that such a restriction, in such a case, is not naturally calculated to lead to litigation, since, if the party in whose favor the obligation exists insists upon its performance, it would in all probability be performed; and if the party upon whom it rests, should refuse to obey the restriction, the party in whose favor it was imposed would not be likely to insist upon it, both these parties being one and the same.    But does it not seem to result that he may do very much as he pleases about performing such an obligation?    I confess my inability to see how the restriction is any more binding upon the devisees or their estate than it would have been upon the heirs or their estate, had the testator disposed by the will, only of the life estate to the wife, and left the remainder to descend to the heirs, and undertaken to impose the same restrictions upon them or upon the estate in their hands.    In either case the whole estate (subject to the life interest) is equally centered in the devisees, in one case, and in the heirs in the other, and no interest but their own to be affected by its observance or violation.    In neither case, as it seems to me, can the restriction be regarded as any thing more than the expression of a desire, or the mere advice of the testator, which, though the

devisees might choose more or less to respect, they had a clear legal right to disregard. To make it obligatory would be to sanction a testamentary guardianship over parties not subject to that species of control.

These considerations seem to me sufficient to dispose of this case, and to show that, as in *Hall v. Tufts, 18 Pick., 459,* and *Blackstone Bank v. Davis, 21 Pick., 42,* the intent expressed is contrary to law, or at least one which courts cannot enforce.    See also *Brandon v. Robinson, 18 Ves., 429; Graves v. Dolphin, 1 Sim., 66; Rochford v. Hackman, 9 Hare, 479; Doebler's Appeal, 64 Penn. St., 9; Kepple's Appeal, 53 Penn. St., 211; Craig v. Wells, 11 N. Y., 315.*

But lest this may be thought too narrow a ground, and since the question in all its aspects, with the authorities upon it, has been argued and fully considered, at the risk of being charged with entering upon a discussion which does not properly belong to the case, I proceed to inquire whether the result will be different if this restriction is to be placed upon the same grounds as if it had been made a condition the non-observance of which had been declared by the will to forfeit or defeat the estate.

It is true the maxim of law, *"modus et conventio vincunt legem,"* is one of very extensive application in matters of contract and deeds *inter partes;* but is much more limited in its application to real estate than to personal property and rights; and even as to the latter, it is very materially limited by two other maxims equally as well established: *" Conventio privatorum non potest publico juri derogare."* and *"fortior et potentior est dispositio legis quam hominis."*    Thus, among many other illustrations which might be given, a man cannot by contract render his will irrevocable during his life, for it is of the very essence of a will to be revocable until death; nor by any instrument which he can make can a man give to his assignee of a chose in action the right to sue in his own name, where

the law has not given that right.—*Wetherell v. Langston,* 1 *Exch.,* 645 ; *Hibblewhite v. McMorine,* 6 *M. & W.,* 216.

"A man did grant a rent with a newly invented clause of distress; that the grantee should hold the distress against gages and pledges; yet, by the whole court, he shall gage deliverance, for otherwise by this new invention all replieves shall be taken away."—*1 Coke Lit. (by Thomas),* p. 21. Many other illustrations will readily occur to any legal mind.

But in reference to real estate and its incidents, the application of the maxim: "*Modus et conventio,*" etc., is by the other two maxims above cited confined to a much narrower range. Here, for the sake of certainty and stability, the law has classified and defined all the various interests and estates in lands which it recognizes the right of any individual to hold or create, and the definition of each is made from, and the estate known and recognized by the combination of certain legal incidents, many of which are so essential to the particular species of estate that they cannot, by the parties creating it, be severed from it, as this would be to create a new and mongrel estate unknown to the law, and productive of confusion and uncertainty. So, for illustration, terms for years go to the executor, and do not descend to heirs, or go, in case of sole corporations, to successors. "A chantry priest (a corporation sole) took a lease to him and his successors for a term of one hundred years: held incompetent for the parties thus to change the legal succession to a term, and that it must go to the executors, like terms for years in other cases:"—*Coke Lit.,* 9. So, again (a familiar instance), it is well settled that the right of redemption is so essential an incident of a mortgage that it cannot be severed by the express agreement of parties. This is too well understood to require the citation of authorities; but see *4 Kent's Com.,* 142, 143, 159 ; *2 Story's Eq.,* 287. So, where the rule in Shelley's case still exists, that when an estate for life is given to a man, remainder to his heirs, the entire estate vests in him and

defeats the remainder, it is not competent for the party conveying the estate by any declaration, however express, of a contrary intent, to defeat the operation of the rule.— *Doebler's Appeal, 64 Penn. St., 9.*

Again, in the case of an estate in tail (which is more instructive in its bearing upon the question before us), this species of estate had certain essential incidents, some of which were fixed and defined by the common law, and others by act of parliament. " By the common law" (I quote from the judgment in *Mary Portington's case, 10 Coke, 38 and 39,* which Lord Coke says was depending in the C. B. upon demurrer fourteen terms, and "had been argued at the bar more than half of fourteen times"), "these incidents are such as are not restrained by the statute, and cannot be restrained by condition, as dower and tenancy by the curtesy after issue are incident to an estate tail, and cannot be restrained by condition. See *22 E., 3, 17.* Also the estate of him and of a tenant in tail after possibility are dispunishable of waste; so a collateral warranty is a bar to an estate tail, and a common recovery also, and none of them can be restrained by any condition or limitation. By statute law, as to make leases by the statute (*32 H. 8, ch. 28*), and to levy a fine by the statute (*4 H. 7 ch. 24, and 32 H., 8, ch. 36*), to bar issue; and none of these (which are incidents of his estate by act of parliament), may be restrained ·by condition" [ and here I call special attention to the reasoning as bearing also upon the incidents implied by the creation of an estate in fee and the repugnancy of conditions or restrictions ]; "for when a man makes a gift in tail he tacitly gives these incidents to it, and therefore to restrain them by condition or limitation would be repugnant. For, suppose that a man makes a gift in tail, and further grants that he may make leases for years or lives, according to the said act, or levy a fine with proclamations, according to the acts in such case, to bar his issues: *provided,* always, that he shall not make leases or levy a fine; none will deny · that such proviso would be

repugnant, and, by consequence, in other cases where such incidents are tacitly implied, for '*expressio eorum quæ tacite insunt nihil operatur.*'"

It was the very object and direct tendency of estates tail to confine the estate for as long a period as possible to the direct descendants or issue of the body of the donee, to prevent their power of sale, and thus to create perpetuities. The courts were generally very strongly against restraining the power of sale in perpetuity; and this was the main reason, undoubtedly, why they recognized the power of the tenant in tail to bar the entail and get rid of the restriction, as one of the essential incidents of the estate. But the influence of wealthy landholders sometimes acquired the ascendency in parliament and in the courts; but the policy of the courts finally triumphed. All this is sufficintly apparent from *Mary Portington's case* above cited, but especially from *Sir Anthony Mildemay's case, 6 Coke, 40.* It constitutes a part of the history of the times. But no such contest ever existed, and no such reason as that against perpetuities was then given, against conditions or restrictions limiting the power of sale of an estate in fee simple. These last were held invalid for other reasons wholly irrespective of their tendency to create perpetuities.

Coming now to a fee simple estate, the highest known to the law and its incidents, no one would contend that a condition in the conveyance of such an estate, that the grantee should not commit waste, nor take the profits, or that his wife should not have dower, or the husband curtesy, or that it should descend to executors, instead of heirs, or one half to female and the other to male heirs, without regard to the number of either, etc., would be valid.

At common law, however, prior to the statute *quia emptores,* a condition against alienation would in England have been good, because prior to that statute the feoffor or grantor of such an estate was entitled to the escheat on

failure of heirs of the grantee, which was properly a possibility of reverter, and was treated as a reversion; so that the vendor did not, by the feoffment or conveyance, part with the entire estate; but this reversion, dependent on this contingency, remained in him and his heirs, which gave them an interest to insist upon the condition and take the benefit accruing to them upon the breach.—*2 Thomas' Coke Lit. 27*, and *De Peyster v. Michael, 6 N. Y., 467.* [This is the fullest and ablest discussion of the whole question of restrictions upon the sale of estates in fee (except as to the question of time), and contains the most complete citation of authorities of any case I have found in the books, and relieves me from going over the general subject.] Whether the statute *quia emptores* ever became effectual in any of the United States by express or implied adoption, or as a part of the common law, we need not inquire, since it is clear enough that no such statute was ever needed in this state, if in any of the western states, as no such right of escheat or possibility of reverter ever existed here in the party conveying the estate; but the escheat could only accrue to the sovereignty, the state. And, therefore, the question of the right to impose such conditions or restrictions stands here upon common-law reasons, as it has stood in England since the statute in question.

Going back to Littleton for the law as it was understood in England after the reversion had been taken away by the statute, in *sec. 360* he states the general principle thus: "If a feoffment be made upon this condition, that the feoffee shall not alien the land to any, this condition is void, because when a man is enfeoffed of lands or tenements he hath power to alien them to any person by the law. For if such a condition be good, then the condition should oust him of all power which the law gives him, which should be against reason; and therefore such a condition is void." And Lord Coke, commenting upon this passage, says: "And the like law is of a devise in fee upon condition the devisee shall not alien, the condition is

void; and so it is of a grant, release, confirmation, or any other conveyance whereby a fee simple doth pass. For it is absurd and repugnant to reason that he that hath no possibility to have the land revert to him should restrain his feoffee in fee simple of all his power to alien. And so it is if a man be possessed of a lease for years, or of a horse, or of any other chattel, real or personal, and give or sell his whole interest or property therein, upon condition that the donee or vendee shall not alien the same, the same is void; because his whole interest and property is out of him, so as he hath no possibility of reverter; and it is against trade and traffic, and bargaining and contracting between man and man."—*Iniquum est ingenuis hominibus non esse liberam rerum suarum alienationem,* etc. (Freely translated): It is a wrong to freemen to restrain the free alienation of their property.

But Littleton, in *sec. 361,* makes this qualification: " But if the condition be such that the feoffee shall not alien to such a one, naming his name, or to any of his heirs, or of the issues of such a one, etc., or the like, which conditions do not take away all power of alienation from the feoffee, etc., then such a condition is good."

Chancellor Kent, however, says (*Com., Vol. 4, p. 131*): " But this case falls within the general principle, and it may be very questionable whether such a condition would be good at this day" (citing the case of *Newkirk v. Newkirk, 2 Caines' R., 345,* where the condition that the devisee should continue to inhabit the town of Hurley was adjudged to be unreasonable). And certainly, in a country like ours, where lands are as much an article of sale and traffic as personal property, and the policy of the state has been to encourage both the acquisition and easy and free alienation of lands, such restrictions ought not to be encouraged by the courts. But the exception stated by Littleton in *sec. 361,* above quoted, was certainly pushed to its extreme verge (and beyond that warranted by any other English case) in *Doe v. Pearson, 6 East, 173,* where it was held

that a condition against alienation, except to the sisters of
the devisees or their children, annexed to a devise in fee,
was good, and that the heirs of the devisor might recover
on its breach.    And I think there is much reason to
doubt whether this case should be recognized as law here
(if, indeed, it would be now in England.—See *Atwater v.
Atwater, 18 Beav., 330*); *Schermerhorn v. Negus, 1 Denio,
448*.    But however competent it may be, under the author-
ities, to impose upon an estate in fee, a condition against
alienation to certain specified persons, it does not follow,
and the authorities upon the point have no tendency to
show, that a condition against selling such an estate at all
to any party or parties, for a long, or for any period of
time, would be valid.    And it is this latter species of con-
dition or restriction only, and the authorities bearing upon
it, that we are here considering.    The restriction against
selling to particular persons, or to any but certain specified
parties, does not, if valid, suspend for a moment the power
of sale, but a sale may be made at any time to parties not
coming within the restriction.    Now, neither Littleton nor
Coke, nor any of the annotators of Coke upon Littleton
(so far as I have been able to discover), has mentioned any
such qualification of the general rule laid down by Little-
ton in *sec. 360*, nor any where intimated that such a con-
dition against alienation for a particular time, or for a
reasonable time, or for any time whatever, would be valid.
And the same may be said of the other approved English
works upon real estate: *Blackstone's Commentaries, Shep-
pard's Touchstone, Bacon's Abridgment, Cruise's Digest,
Comyn's Digest*, and all other English works which I have
been able to examine.    And if there is any English decis-
ion since the statute *quia emptores*, where the point was
involved, in which it was held competent for a feoffor,
grantor or devisor of a vested estate in fee simple, whether
in remainder or in possession, by any condition or restric-
tion in the instrument creating it, to suspend all power of

29 MICH.—18.

the feoffee, grantee, or devisee, otherwise competent, to sell, for a single day, I have not been able to find it; and the able counsel for the defendants, whose research nothing of this kind is likely to escape, seem to have been equally unsuccessful. In making this statement I do not overlook *Large's Case, 2 Leonard, 82;* and *3 Leonard, 182,* which by some elementary writers and annotators, and in some *dicta* by judges, and perhaps one or two decisions in this country, seems to have been understood as warranting such a restriction, and upon which all such elementary writers, annotators, and judges, who profess to rest such an opinion upon any authority, rely, but which I propose presently to show decides no such thing as to any vested estate of any kind.

Neither Chancellor Kent, in his Commentaries, nor Mr. Hilliard, in his work on real property, recognize the validity of such a restriction, though they both notice all the others mentioned as good by Littleton, Coke, Cruise, Bacon, and Sheppard (or Mr. Justice Doderidge, whichever was the author of the Touchstone). And Bacon and Hilliard, as well as Fearne, Cruise, and the annotators upon Coke *super* Littleton, cite *Large's case* to another point which it does involve, but not to that we are now considering.

Coming now to the authorities relied upon by the counsel as supporting such a restriction: *Doe v. Carter, 8 T. R., 60,* was a case which did not in the remotest degree involve any such question. But Lord Kenyon, in a *dictum* entirely aside from the case, and for which he cites no authority (and therefore not likely to have been argued, or if argued at all, to have been as carefully considered as the real question upon which the case turned), in speaking of qualifications to the maxim, " *Modus et conventio,*" etc., says: " For a grantor, when he conveys an estate in fee, cannot annex a condition to his grant not to alien; nor when he conveys an estate tail, a condition not to bar the entail: such restrictions are *imposed to prevent* perpetuities. But short of that restriction, both parties to

a contract may make it in whatever manner they please." Now, so far as regards estates tail, it is no doubt true that the restriction he mentions was imposed to prevent perpetuities. But this was, as it seems to me, rather carelessly connected by him with an estate in fee, if indeed he intended to connect that with the reason given. And I venture to say that nothing can be found in the English law up to that time (at least I have been able to find nothing) which in any manner indicates that the reason for holding restrictions upon the sale of a fee simple void, was to prevent perpetuities; and the English law is still, so far as I can discover, just as far from warranting such an idea, though this *dictum* has given rise in this country to several *dicta* of the same kind.

The case of *Doe v. Pearson* I have already referred to, and it does not relate in any manner to a restriction as to time.

*Gray v. Blanchard, 8 Pick., 284,* was the case of a condition only against using the property in a certain manner (no windows to be placed in the north wall of a house); and, of course, all that was said about the validity of a condition against selling within a particular time, could be nothing else but a *dictum;* and upon examination it proves to be a very careless *dictum,* for that eminent judge. He cites *Coke Lit., 223,* to the proposition that "if the condition be that the grantee shall not alien to particular persons, or within a reasonable limited period, these conditions shall stand, not being inconsistent with the nature of the estate granted." Upon reference to the work cited, it will be found that "this shaft came never out of Littleton's quiver of choice arrows," nor from that of Lord Coke, and that neither Littleton nor Coke have spoken at all of a restriction for any *time.* Again this *dictum* cites *Sheppard's Touchstone, 131,* to the proposition: "If one make a feoffment in fee, on condition that the *feoffee* shall retain the land for twenty years without interruption, it seems this is a good condition." On turning to *page 131,* of the

Touchstone, I find this passage: "If one make a feoffment of land in fee, on condition that the *feoffor* shall retain the lands" (and the rest of the passage in the very words quoted by the judge), a difference in one word which wholly changes the effect of the passage.   I should be inclined to charge so obvious a blunder to the printer, but for the fact that without it the passage would be against the purpose for which it seems to have been cited.

*Blackstone Bank v. Davis, 21 Pick., 42,* and *Simonds v. Simonds, 3 Metc., 562,* both contain *dicta* to a similar purport.   But they are so obviously mere matter of illustration, mere *dicta,* in no way relating to the question before the court, and made without examination, that it is unnecessary to notice them further.

There is also a like *dictum* in the opinion of Judge Platt, in *Jackson v. Shutz, 18 John., 184,* (a case which has been overruled in that state, so far as it has any bearing here, by the well considered case of *De Peyster v. Michael, 6 N. Y., 467*), and Judge Platt cites *Large's case* in support of the *dictum.*

*Langdon v. Ingram's guardian, 28 Ind., 360,* was a a devise of real estate to the widow, in trust for the benefit of children, and the restriction was upon her power to convey until the youngest of the children should become of age.   Isee no objection to this, so long as it did not violate the rule against perpetuities.   But so far as any thing is said upon the right of restricting the power of sale generally, of an estate in fee, when the conveyance is made directly to the party himself and for his own benefit, it was aside from the case, and not authority.   *Fisher v. Taylor, 2 Rawle, 33,* was also a conveyance to trustees, and involved substantially the same principles as the Indiana case last cited.

In *McWilliams v. Nisly, 2 Serg. & Rawle, 507,* the facts (as stated in the brief of defendant's counsel, which I find sufficiently correct as far as it goes), were these: "A man deeded certain land to his son-in-law with a restric-

tion that he should not sell it during the life of the grantor, except in a specified contingency. There was no condition for a forfeiture or limitation over in case of sale." [But the restriction was imposed for the benefit of the grantee's wife and children.] "The grantee conveyed the land in violation of the restriction, by a warranty deed. He died, and his children (heirs) brought ejectment against the party claiming under their father's deed." Defendant's counsel say: "The court held the restriction against alienation in the original deed valid, but gave judgment against the plaintiffs on the ground that they were estopped by the warranty in their father's deed." On a careful examination, I think it is stating the case rather strongly to say that the court judicially decided the restriction to be valid. *Tilghman, J.,* does clearly express that opinion, but in substance his conclusion is, that whether good or not, the heirs were estopped, and the case was clear upon that point. *Gibson, J.,* as I understand him, does not expressly hold the restriction good, but the fair result of his opinion is that, assuming it to be good, still the heirs were estopped, and the case was clear upon that point. The last is clearly the real ground of the decision, and, whether right or wrong, it is quite manifest neither of the judges considered the other question as necessary to the decision upon that point, nor therefore upon the case. But so far as it may be said to have treated the restrictions as valid, it was put upon the ground that the acceptance of the deed was equivalent to a covenant to stand seized "to such uses as appear to have been intended in favor of his wife and children." And if *Gibson, J.,* can be said to have sustained the condition as good at all, it was, I think, upon this ground only, and it seems to me to be impliedly admitted by the opinions, when taken together, that such a restriction would not be good in common-law conveyances. But certainly the restriction could not be sustained on this ground under the will in the present case, for two very satisfactory reasons at least: *First,* we had no statute of uses in

this state until March, 1849 (*Trask v. Green, 9 Mich., 358*), and our present statute would hardly sustain covenants to stand seized; and, *second*, had there been such statute there were no parties here in whose favor any use could operate, or for whom the devisees were to stand seized.

*Tilghman, J.,* after stating that a restriction against selling to a particular person would be good, says: "So I take it if the restriction was of the alienation during a particular time, as is proved by the decision in *Large's case, 2 Leonard, 82,* which has been cited and recognized in the books, abridgments, and elementary authors of good authority down to the present day, and I have no doubt is good law." Now, I have carefully examined *Large's case* referred to, and fully agree with the judge that it is good law. I feel equally confident that it was not then, and never has been, any authority for the proposition for which the learned judge cites it, viz.: that a restriction or condition in the conveyance of a vested estate in fee simple against alienating for a particular time is valid. Judge Tilghman, like Judge Platt in *Jackson v. Shutz, 18 John., 184,* and like some of the elementary writers (*Washburn, Vol. 1, p. 69*), and some annotators and compilers, seems to have overlooked the fact that the estate to which was attached the condition against the alienation "until William" (another son of the testator) "should come of the age of twenty-two years," was but a *contingent* remainder, which was not to vest until the son William should arrive at that age; and might never vest at all, and could never vest if the son William should happen to die before that age; but if he should happen to live to that age, the estate would from that moment vest, and from the same moment, also, the restriction, *by its very terms,* was to cease. The interest in such a remainder at that time (whatever it may have become since) could hardly be looked upon as property subject to sale at all, even without this restriction, until the event should happen upon which it was to vest; for, though descendable to heirs and assignable in equity, it

could not be sold and transferred as property by any instrument of conveyance known to the common law, though it might (shortly after that time, at least), in some cases, where such a proceeding was applicable, be cut off, extinguished, or barred, and in a certain sense passed over, by the estoppel created by fine or common recovery; a kind of *quasi* judicial proceeding in which the person entitled was brought in as vouchee.—*Note to Thomas' Coke Lit., Vol. 2, p. 140; 2 Cruise Dig. (by Greenleaf), 333. Large's case* was decided in *K. B., 29 Elizabeth,* and as reported is peculiarly liable to be misapprehended upon a hasty glance, as the particular ground of the judgment is not mentioned. But when the facts are examined, it will be found to be a clear case of contingent remainder, as I have stated. "A, seized of lands in fee, devised the lands to his wife until William, his son, should come to the age of twenty-two years, and then the remainder of part of the lands to his two sons, A and John; the remainder of other part of his lands to two others of his said sons, upon condition that if any of his said sons, before William should come to the age of twenty-two years, shall go about to make any sale of any part, etc., he shall forever lose the lands and the same shall remain over, etc. And before his said son William came to twenty-two years, one of the other sons leased that which to him belonged, for sixty years, and so from sixty years to sixty years, until two hundred and forty years ended," etc. The question was whether this was a breach of the condition, and the court held it was.—*2 Leon., 82.* As reported in *3 Leon., 182,* the same devise is stated as follows: "A, seized of lands in fee, devised the same to his wife till William, his younger son, should come to the age of twenty-two years, the remainder when the said William should come to such age, of his lands in D to his two sons, Alexander and John, the remainder of his lands in C. to two other of his sons, *upon condition, Quod si aliquis dictorum filiorum suorum circumibit vendere terram suam,* before his

said son William should attain his said age of twenty-two years *in perpetuum perderet eam,*" and the other facts as in the case in *2 Leonard, 82.*   Now, this is the case of a contingent remainder, as given by *Mr. Fearne on Contingent Remainders, p. 5,* and of the first class mentioned by him, for which he cites, among others, this same case.   See *Thomas' Coke Lit., Vol. 2, p. 104 and 105 (top paging 2d Amer. ed.),*   In *Bacon's Abridgment, Vol. 7, p. 749 (Amer. ed. 1813), Title, " Remainder,"* I find the precise case stated (except that twenty-one instead of twenty-two years is inserted): "But if one gives lands to A till B comes to twenty-one years of age, and when B comes to such age then the remainder over, this remainder is contingent, and uncertain whether it will ever vest, for if B dies before such age, the remainder is become void."   And in the margin I find a reference to *2 Leonard, 82,* and *3 Leonard, 182,* this same *Large's case.*   Mr. Cruise (*2 Cruise Dig., by Greenleaf, top paging, 230*), and Mr. Hilliard, in his work on real estate (*Vol. 1, p. 514*), cite the same case as one of contingent remainder, and neither of them, nor Sheppard's Touchstone, nor any of the annotators of Coke upon Littleton, refers to it under the head of conditions or restrictions upon the sale of a fee.

The case falls clearly within the definition of a contingent remainder, as given by all the works on the subject, including Mr. Washburn, who, in his useful work on real estate, has correctly defined the various classes of such remainders, without referring for this purpose to *Large's case* (though he cites works which cite it as a contingent remainder), while he does cite the case as warranting a restriction upon the power to sell a vested estate in fee for a reasonable time, a proposition which it does not tend to support.

When it is so clear that *Large's case* is no authority for such a proposition, it is perhaps not very important by whom, or how many times it may have been cited for that purpose.   But so far as appears from the books to which I

have had access, the first instance in which it is found cited to sustain such a restriction, is in a note to *Sheppard's Touchstone, p. 129 (Amer. ed. of 1808)*, which I take to be the note of Mr. Hilliard, the English editor to the edition of 1780. The passage of the Touchstone to which it is appended is that "if a conveyance be made of land, etc., in fee simple by a deed or will, upon condition that the feoffee or grantee shall not alien to certain persons, this is a good condition." Mr. Hilliard's note is in these words: "And the grantee may also be restrained from alienating for a particular time: *Large's case, 2 Leon., 82; 3 Leon., 182.*"

The statement of the case already made shows that this is a very careless note, based upon an evident misapprehension of the case. And relying probably upon this or some other equally careless note of the case (for it could not have been done upon a careful examination of the case), Mr. Gwillim, in 1797, appends a similar note (citing the same case) to a passage in *Bacon's Abridgment,* "*Condition*" "*L,*" apparently unconscious that Bacon himself had stated and cited the same case in the text of the same work, as a case of contingent remainder, which, if correct, completely nullifies it as an authority for imposing such a restriction upon a vested estate in fee, for which, as the context shows, Mr. Gwillim cites it. Had the case been cited for such a purpose before the judges who decided it, they would have stared with astonishment.

This disposes of all the cases cited by defendants' counsel, so far as they purport to be rested upon the authority of any decided case.

*Dougal v. Fryer, 3 Mo., 40,* so far as it holds that, in case of the conveyance of an estate in fee to a minor, a restriction against his selling during his minority is good, is undoubtedly correct, as he could not sell without such restriction. And I find no fault with the decision as to the effect of the change of the age of majority, as fixed by the Spanish law, made by subsequent statute, which may be

29 MICH.—14.

right or wrong. But what is said in the opinion upon the power of extending the restriction beyond the age of majority, finds, as I think I have sufficiently shown, no support in the English common law. And the reason or maxim upon which the court seem to rest the validity of the restriction: " *Cujus est dare ejus est disponere,*" is too broad, and proves too much, as it would equally warrant a total and perpetual restraint of the power of sale, or the cutting off, at the will of the parties creating the estate, any of the other legal incidents of an estate in fee. And when, as another reason, it is said " the limitation is not upon the estate, but the power to sell," the distinction is too refined for clear comprehension by ordinary minds, and one which does not seem to have occurred to Littleton or Coke, or the other most approved English writers upon the law of real estate, and not very generally, I think, to American writers. No authority is cited by the court, for the validity of such a restriction as to time, nor does it appear that any was cited by counsel.

*Stewart v. Brady, 3 Bush (Ky.), 623,* followed by *Stewart v. Barrow, 7 Bush, 368,* expressly holds that a restriction upon the power of sale of a fee for a particular time is good. But no authority is cited by the court, and few by the counsel, and the case does not seem to have been much considered upon principle. There was no devise over, and the opinion admits that the restriction was not made a condition, but that the devise was of an unconditional estate, subject to this absolute restriction. In whose favor then (as I have asked with reference to the present case), was the restriction imposed? And who had a right to, or an interest in its enforcement, or to recover for a breach ?

We were also cited to *Perkins v. Clack, 3 Head (Tenn.), 434,* but we are unable to perceive that it has any bearing upon the question. And the same may be said of the case of *Shonk v. Brown, 61 Penn. St., 320,* in which

the court expressly held that the restriction did not affect the case; the devise made by the wife, owing to the disability of coverture, being void without the restriction.

We are entirely satisfied there has never been a time since the statute *quia emptores* when a restriction in a conveyance of a vested estate in fee simple, in possession or remainder, against selling for a particular period of time, was valid by the common. law.    And we think it would be unwise and injurious to admit into the law the principle contended for by the defendants' counsel, that such restrictions should be held valid, if imposed only for a reasonable time.    It is safe to say that every estate depending upon such a question would, by the very fact of such a question existing, lose a large share of its market value.    Who can say whether the time is reasonable, until the question has been settled in the court of last resort; and upon what standard of certainty can the court decide it?    Or, depending as it must upon all the peculiar facts and circumstances of each particular case, is the question to be submitted to a jury?    The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power of alienation for a single day, is inconsistent with the estate granted, unreasonable and void.

Certainty in the law of real estate, as to the incidents and nature of the several species of estates and the effect of the recognized instruments and modes of transfer, is of too much importance to be sacrificed to the unskillfulness, the whims or caprices of a few peculiar individuals in isolated cases.

The decree of the superior court, overruling the demurrer and granting the relief prayed by the bill, was correct, and should be affirmed, with costs.

COOLEY, J., and GRAVES, CH. J., concurred.

CAMPBELL, J., did not sit in this case.