# CHARLESTON.

H. B. White *v.* Lewis White

(No. 6498)

Submitted October 22, 1929. Decided November 12, 1929.

*Leftwich & Meadows* and *T. G. Nutter,* for appellants.
*George S. Wallace,* for appellee.

Maxwell, Judge:

This appeal involves the construction of the following provision in a deed conveying a fee simple estate:

> "and the said party of the second part hereby covenants with the said parties of the first part that the property hereby conveyed shall not be conveyed, demised, devised, leased or rented to any person of Ethiopian race or descent for a period of fifty years from the date hereof; * * *"

The deed contains no condition or limitation in event of breach of the said covenant. The same provision was contained in each of several deeds made by Anna E. Jones and others for eleven lots constituting Block No. 5 of the Jones and Rau Addition to the city of Huntington. Deed for lot No. 4 was made to W. W. Warden who thereafter conveyed it to E. B. Honaker, who, together with his wife, Ethel B. Honaker, later made conveyance of the said lot by deed dated November 1, 1926, to Lewis White and Cora White, his wife, who are colored people. The plaintiff is the owner of lot No. 6, which, it appears from the record, he has owned since some time in 1926, the exact date not appearing. The plaintiff and the defendants, Lewis White and Cora White, occupy their respective lots for residential purposes.

By his bill, the plaintiff prays, inter alia, that the said deed from Honaker and wife to White and wife be held invalid and void, that the said grantees be enjoined from renting or leasing the said property, and for general relief. Upon final hearing the circuit court declared said deed to be null and void and further decreed "that the defendants E. B. Honaker and Ethel B. Honaker be and they are restrained and enjoined from conveying, demising, devising, leasing or renting the said Lot Four as shown on the revised map of Block Five, Jones and Rau Addition, contrary to the provisions of the said restriction set out in the plaintiff's bill, and that the said Lewis and Cora White are enjoined from taking or attempting to take title to the said premises and from renting or leasing the same contrary to the provisions of the said restriction."

In the strictest sense a negro is not an Ethiopian, though both are Africans. In popular parlance the distinction is not observed and the American negro is frequently referred to as an Ethiopian,—a fact in no wise to the discredit of the negro, as Ethiopian civilization, culture and accomplishment are recorded from early historic periods. The prominent place of the Ethiopian in early civilization appears in both sacred and secular chronicle. The term "Ethiopian" as used in the deed will be deemed to have been used in its popular sense and to include negroes.

It is to be noted that the above quoted provisions of the deed made by Jones and Rau embraces a restriction upon alienation and is not a mere restriction of use of the property conveyed. It was urged in oral argument that the words "leased or rented" imply occupancy by the lessee. This is a non-sequitur. It frequently happens that a lessee does not himself occupy the leased premises. If not prevented by the terms of the lease, he may assign the same or sub-let the premises. We are therefore not called upon to consider the validity of a restriction or limitation of use of property imposed by deed conveying the same. Reasonable limitations of use are generally upheld, 18 Corpus Juris, p. 361; 8 Ruling Case Law, 1115; Minor on Real Property, sec. 562; *Los Angeles Investment Co.* v. *Gary*, (Cal.) 9 A. L. R. 115; *Parmalee* v. *Morris*, (Mich.) 38 A. L. R. 1180. Such restrictions usually appear in the form of covenants not to do particular things, and such covenants are ordinarily enforced in equity; *Robinson* v. *Edgell*, 57 W. Va. 157. Reasonable restrictions on use violate no principle lying at the base of untrammeled alienability of property. But we must meet here the question of the right of a grantor of a fee simple estate to impose restrictions on alienation by his grantee and those claiming under him.

Conditions or restrictions completely destroying the right to alien property, even for a limited time, are, we believe, held void by all the courts as inconsistent with complete ownership; as, for example, a grant or devise of land to A with condition that he shall not alien the same for ten years. 18 Corpus Juris, p. 361; 8 Ruling Case Law, 1114; Delvin on

Real Estate, sec. 965; *Latimer* v. *Waddell,* (N. C.) 3 L. R. A. (N. S.) p. 668 and note; *Totten* v. *C. & C. Co.,* 67 W. Va. 639, 643, and many cases there cited, among which is *Potter* v. *Couch,* 141 U. S. 296, which is there quoted from as follows: ''The right of alienation is an inherent and inseparable quality of an estate in fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised.'' But on the question of partial restraints of alienation the cases are hopelessly in conflict.

There is quite an array of cases holding that limited restraints on alienation are valid, that is, reasonable limitations applying only to a particular person or class of persons, or for a limited time. This line of decisions is recognized by numerous texts and with varying comment. 18 Corpus Juris, p. 361; 8 Ruling Case Law, 1114; II Minor's Institutes, p. 250; Devlin on Real Estate, sec. 965. Chancellor Kent thus comments on the subject: ''Fee Simple is a pure inheritance, clear of any qualification or condition, and it gives a right of succession to all the heirs generally, under the restriction that they must be of the blood of the first purchaser, and of the blood of the person last seized. It is an estate of perpetuity, and confers an unlimited power of alienation, and no person is capable of having a greater estate or interest in land. Every restraint upon alienation is inconsistent with the nature of a fee simple; and if a partial restraint be annexed to a fee, as a condition not to alien for a limited time, or not to a particular person, it ceases to be a fee simple, and becomes a fee subject to a condition.'' 4 Kent's Commentaries 5. The distinguished authority further says at page 132: ''If, however, a restraint upon alienation be confined to an individual named, to whom the grant is not to be made, it is said by very high authority (referring to Coke on Littleton, sec. 361) to be a valid condition. But this case falls within the general principle, and it may be very questionable whether such a condition would be good at this day.'' The section of Littleton referred to reads: ''But if the condition be that the feoffee shall not alien to such an one, naming his name, or to any of his heirs, or of the issues of such an one, or the like,

which conditions do not take away all power of alienation from the feoffee, &c., such condition is good." In Ruling Case Law, *supra,* this summary is contained: "On principle and authority, the better rule is that a direct restriction for any time, however short, is void."

In Vol. 3, Tiffany on Real Property (2nd Ed.), sec. 592, the author says: "But a condition directed at a transfer to a particular person or persons has been regarded as not so substantially interfering with the freedom of alienation as to be within the general rule." In Minor on Real Property (2nd Ed.), Vol. 1, sec. 555, we find: "It is frequently said that a reasonable restraint on alienation is valid. * * * If the condition merely excludes certain designated persons it is good. But if the condition excludes all except certain specified persons it is bad. Thus the distinction turns on the degree of restraint. * * * There are cases which go beyond upholding conditions in restraint of alienation merely to a few designated persons. According to these decisions the restraint may be extended to certain designated races, without rendering the condition void. * * * Other cases, however, hold all conditions in restraint of alienation to a large class such as one comprising a whole race (for example, conditions against alienation to Chinese, negroes, etc.) void as contrary to public policy, though they be limited in time." In Professor John Chapman Gray's learned treatise on Restraints on the Alienation of Property, (2nd Ed.), the author says in section 41: "The authorities it will be seen are in hopeless conflict. The rule which naturally suggests itself is that a condition is good if it allows of alienation to all the world with the exception of selected individuals or classes; but is bad if it allows of alienation only to selected individuals or classes. * * * Perhaps this rule might be difficult of application, or easily evaded." The impracticability of such distinction is apparent, as the condemnation imposed by his second proposition can be avoided and the approval of his first invoked by making alienation available to all the world with the exception of designated classes though the latter may include all of humanity except a small number intended to be favored. Very properly did the author note in the paragraph quoted the

difficulties attending the proposed rule. That distinguished author also makes the classification of conditions, conditional limitations and mere restraints on alienation. As summarized in section 270, Graves Notes on Real Property: ''It will be observed that 'condition' refers to a case where on breach of the restraint the land is forfeited to the grantor or his heirs on entry, while 'conditional limitation' refers to a case where on breach of the restraint the land is to pass from the first grantee over to a second. And both of these cases of forfeiture for alienation (by way of cesser or limitation over) are to be distinguished from a mere restraint on alienation * * *, where the intent of the grantor is, not that the grantee should lose the land on alienation, but that it should remain the grantee's (any alienation, voluntary or involuntary, being merely nugatory), in spite of his own wishes or the claims of his creditors.'' In some of the cases the absence of a provision of forfeiture to the grantor or of a limitation over to third parties in event of breach of the condition has been taken by the courts as a basis for holding such attempted restraints to be entirely nugatory. Outstanding among such cases is *Fowkes* v. *Wagoner*, (Tenn.) 46 S. W. 586, wherein it is held ''a restriction on alienation in a devise, though the restriction be for a limited time or to a limited class of persons, is nugatory, unless there be a reversion or limitation over to a third person provided for on violation of the restricting clause.'' This distinction seems not to be generally observed. I Minor on Real Property, sec. 555, note. The better rule is that the matter of forfeiture or further vesting of title in event of violation of the covenant or restriction of the grant is a matter of intention which may be determined from the context of the instrument if the intent appears with reasonable certainty therefrom though not specifically declared. This principle is clearly stated by JUDGE RITZ in *Killgore* v. *County Court*, 80 W. Va. 283, 286.

> ''Conditions in conveyances which have the effect of forfeiting the title vested in the grantee are looked upon with disfavor by the courts, and unless the language used clearly imports the intention of the parties that the title should revest

upon non-compliance with the condition, the deed will not be held to be a deed upon condition subsequent. Ordinarily grants upon such conditions contain a provision in them that upon non-compliance with the conditions specified the title shall revert to the grantor. However, it is not necessary that the deed shall contain such language if it is clear from the language used by the parties in the deed as a whole that it was their intention and purpose that the title should revert to the grantor upon a failure to use the land for a particular purpose, or upon the failure to perform a specified condition. However, in order that the language in a deed may be given the effect of a condition subsequent it must clearly appear that the parties thereto intended that, in case of the grantee's failure to use the land for a particular purpose, or to do a particular thing, he should forfeit his interest therein. Language used in a deed declaratory of the purpose of the grantee will not ordinarily have the effect of creating a condition subsequent, and of forfeiting the interest which may be granted to him in the land by a failure to appropriate it to the purpose so declared. See *Keatley* v. *County Court*, 70 W. Va. 267; *Carper* v. *Cook*, 39 W. Va. 346.''

''A condition subsequent must be created by express terms or clear implication.'' *Sands* v. *Holbert*, 93 W. Va. 574, 578. Though the absence of such forfeiture or re-vesting clause may be determinative of whether the restriction attempted to be imposed by the deed is a condition or a covenant, it is not necessarily so. We are therefore of opinion that the position taken by appellants that because there is no limitation over or provision for forfeiture or re-entry for breach of the restriction in the deed of Jones and Rau to Warden, the attempted restraint is for that reason alone of no effect, is not well taken. Nor do we find merit in the contention of appellant that the restriction involved is violative of the Fourteenth Amendment of the Constitution of the United States, which prescribes that no state shall ''deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'' The Fourteenth Amendment applies to state governments and not to individuals. It is not its

purpose to place restriction on individual contract. "Individual invasion of individual rights is not the subject-matter of the amendment." *Civil Rights Cases,* 109 U. S. 3. See also *Corrigan* v. *Buckley,* 271 U. S. 323.

Among the cases holding that partial restraints on alienation are valid, we find *Cowell* v. *Spring Co.,* 100 U. S. 55; wherein the principal discussion and point decided concerned user. But Mr. Justice Field by way of dictum says "conditions which prohibit its alienation to particular persons or for a limited period, or its subjection to particular uses, are not subversive of the estate: they do not destroy or limit its alienability or inheritable character." *Koehler* v. *Rowland,* (Mo.) 205 S. W. 217, sustained this dictum in holding a condition in a deed valid which provided that the land should not be "sold, leased, or rented to any negro or negroes for twenty-five years." To the same effect is *Queensborough Land Co.* v. *Cazeaux,* (La.) 67 So. 641.

In *Corrigan* v. *Buckley,* (D. C.) 299 Fed. 899, it was held that property owners could enter into a covenant running with the land binding themselves, their heirs and assigns, during a period of twenty-one years, not to permit land to be sold or leased to, or occupied by negroes. A year later the same court in *Torrey et al.* v. *Wolfe et al.,* (D. C.) 6 Fed. (2nd) 702, held that a restrictive covenant in a deed that land sold would never be rented, leased, sold, transferred, or conveyed unto any negro or colored person, under penalty of $2,000 was valid and enforceable in equity. We quote from the court in the latter decision, page 703. "The citizen, whether he be black or white, may refuse to sell his property, or he may sell it under such lawful restrictions as he may see fit to impose. This right of placing restriction upon the use of property is available alike to all citizens, white or black, and a covenant thus placing the restriction upon the use of property is enforceable in equity against a member of the excluded race, whether the person particularly excluded be white or black. We think the *Corrigan* case is controlling here." From the foregoing, it would seem that the court had user in mind. In neither case was a clear distinction drawn between user and ownership. See likewise, *Russell et al.* v.

*Wallace et al.,* (D. C. 30 Fed. 891; *Cornish et al.* v. *O'Donoghue et al.,* (D. C.) 30 Fed. 983.

In the Kentucky case of *Lawson* v. *Lightfoot,* (Ky.) 84 S. W. 739, a testator devised property to his widow for life with the remainder to his two daughters under the following restriction: "And in order to secure to my said two daughters, Ida and Anna Grace, my said office property, it is my will and desire that the same shall not be sold for any purpose whatever until the death of my said wife." The widow and two daughters sold the above property to Lightfoot, who refused to accept the deed on the ground that it would not invest him with good title to the property. The court refused specific performance of the contract at the behest of the vendors and held the restraint valid. The court said: "It must be conceded that the great weight of authority outside of Kentucky is to the effect that, where the fee-simple title to real estate passes under a deed or will, any restraint attempted to be imposed by the instrument upon its alienation by the grantee or devisee is to be treated as void; and such is clearly the rule announced by Mr. Gray in his excellent work on 'Restraints of Alienation'." See also *Frazier* v. *Combs,* (Ky.) 130 S. W. 812, a restriction as to time. *Janss Investment Co.* v. *Walden et al.,* (Cal.) 239 Pac. 34, distinguishes between user and alienation and holds restraints on the latter to be void. See likewise *Los Angeles Investment Co.* v. *Gary, supra.*

In the Virginia case of *Camp* v. *Cleary,* 76 Va. 140, which is often quoted as affirming the proposition that partial restraints on alienation are valid, one R. took by deed a life estate in a mausoleum lot and a fee simple in two other lots. The condition attached restricted R. from ever in any way alienating the mausoleum lot upon breach of which the deed was to be void, and the three lots revert and vest in E. R. alienated part of the mausoleum lot and the heirs of E. brought ejectment to recover a portion of the two lots granted in fee from those claiming under alienation from R. The heirs of E. won their contention, the court holding that the condition against absolute alienation attached to the life estate, and that such condition was not repugnant to a life estate. In the opinion we find this: "Conditions are said to be repugnant when they are incompatible with the legal

nature and incidents of the estate to which they are annexed. 2 Minor's Inst. (2nd Ed.), 249. One of these incidents, the most important perhaps, is the power of alienation. It may be restricted to a limited extent; for instance, as to certain designated persons, or, it is said, for a reasonable time * * * but an absolute and unqualified restraint as to estates generally, whether legal or equitable, is inadmissible.'' It is readily seen from this that the court was not dealing with limited or partial restraints, but merely mentioned them in passing. Such utterance therefore would seem to be dictum. We have observed, however, that the line of demarcation between dictum and matter essential to a decision is often very difficult of ascertainment.

So much for the cases holding or purporting to hold that partial restraints on alienation to classes are valid. We have attempted to cover the outstanding cases sustaining this contention reported throughout the United States.

Turning now to the cases holding such partial restraints on alienation invalid, we find California thoroughly wedded to the doctrine. In the carefully considered case of *Title Guarantee Co.* v. *Garrot,* (Cal.) 183 Pac. 470, it is held that a condition against leasing or selling to any negro, Chinese, or Japanese is void as a restraint on alienation. The two cases of *Queensborough Land Co.* v. *Cazeaux, supra,* and *Koehler* v. *Rowland, supra,* are expressly disagreed with and the court continues: ''We think that, on principle, any restraint on alienation, whether as to persons or time, is invalid.'' The court takes comfort in being logical from the fact that section 711 of the Civil Code declares: ''Conditions restraining alienation, when repugnant to the interest created, are void.'' See likewise *Los Angeles Investment Co.* v. *Gary, supra,* and *Janss Investment Co.* v. *Walden et al., supra.* The court clearly distinguishes between user and alienation in the last named cases.

Michigan is in line with California decisions. Starting with *Mandlebaum* v. *McDonell,* 29 Mich. 78, 18 Ar. Rep. 61, Mr. Justice Christiancy held that a restraint on alienation for any length of time was invalid. The time element was the only question before the court and the opinion was carefully

limited to such. It holds: "The only safe rule of decision is to hold, as I understand the common law for ages to have been, that a condition or restriction which would suspend all power of alienation for a single day is inconsistent with the estate granted, unreasonable, and void." In Gray on Restraints on Alienation (2nd Ed.), page 41, the author says of this opinion: "In *Mandlebaum* v. *McDonell*, 29 Mich. 78, the court thought that there was neither condition nor conditional limitation, but only a restriction on alienation within a limited time; but the opinion of Christiancy, J., holding the restriction bad, is the fullest argument against the validity of such conditions and conditional limitations to be found in the books." Arguing from this premise the court in *Porter* v. *Barrett*, (Mich.) 206 N. W. 532, held that a covenant forbidding alienation to persons of the colored race is void as a restraint on alienation. We quote from that opinion fully: "Now if a restraint on alienation for a single day is bad, how can it be said that a restraint on alienation to a large class of citizens or a small one, or to even one, is good? If it is not for the courts to determine what would be a reasonable time to restrain alienation, how can it be left to the courts to say whether a restraint on alienation to a class is reasonable or not? We must bear in mind that we are not dealing with a restraint on the use of the premises. Such restraints unless unreasonable have quite uniformly been upheld. Before the sale of intoxicating liquor was prohibited, this court and practically every court of last resort in the union upheld restraints of the use of premises for its manufacture or sale. Such a restraint upon the use was uniformly upheld; but would a restraint on sale of premises to one who was engaged in the sale of intoxicating liquors elsewhere be valid? I think not. Restraints upon the erection of manufacturing plants in the residential districts have uniformly been upheld, but would a restraint of sale to one engaged in the manufacturing business be valid? I think not. Restraint on the occupancy of premiess in residential districts by colored people has been upheld by this court. *Parmalee* v. *Morris*, (Mich.) 188 N. W. 330. Does it follow that a restraint upon the right to sell property to a colored man is valid? I think

not. I think the holding and the reasons for the holding in *Mandlebaum* v. *McDonnell, supra,* precludes us from sustaining as valid the restrictions before us." The Michigan court reiterated this principle in the later case of *Schulte* v. *Starks,* 213 N. W. 102, in which a distinction was drawn between user and alienation.

In *De Peyster* v. *Michael,* 6 N .Y. 467, 57 Am. Dec. 470, it was held that a condition in a deed that the grantee alienating shall pay to the grantor a part of the price received is invalid, because it is a restraint on alienation. Chief Justice Ruggles considered the subject at length and says: "But it is said that the condition that the grantee shall pay one-fourth of the sale money whenever he sells the land is not repugnant to the estate, because it is not an absolute and entire restraint and prohibition; and that the grantee may make a valid conveyance of his land upon paying the grantor a part of the price. * * * Upon the highest legal authority, therefore, it may be affirmed that in a fee-simple grant of land, a condition that the grantee shall not alien, or that he shall pay a sum of money to the grantor upon alienation, is void, on the ground that it is repugnant to the estate granted." In *Schermerhorn* v. *Negus,* (N. Y.) 1 Denio 448, a testator devised land in fee to his grandchildren and by a subsequent clause declared that no portion of the real estate thereby devised should be sold or alienated by the devisees or their descendants, except to each other or their descendants upon pain of forfeiting the premises. It was held that this provision was repugnant to the estate devised and therefore void. As bearing on the general subject see other New York cases: *Green* v. *Green et al.,* 26 N. E. 738; *Booker* v. *Booker,* 119 App. Div. 482; *Grems* v. *Parsons,* 149 N. Y. S. 577. In *In re Tallman's will,* 229 N. Y. S. 308, the court said at page 312: "In accordance with this rule of construction, it has been held that, where an estate in fee-simple is granted, a condition that the grantee shall not alienate the land, or shall alienate it only to those having the testator's family name, is void for the reason that a fee-simple estate and such a restraint upon its alienation cannot in their nature coexist. Such a condition is held to be void for repugnancy."

*Johnson* v. *Preston,* (Ill.) 80 N. E. 1001, is a case in which a testatrix devised to her executor real property to hold for twenty-five years from the probate of the will, in trust for the use of certain of her grandchildren, with no power of sale, conveyance, or alienation of the property during that period by the trustee or the grandchildren, except that the grandchildren might convey one to the other, the property to vest in the grandchildren or their heirs at the expiration of the twenty-five years. The court said: "The general rule is that where a devise is made in fee, either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise, and void. To transfer a fee and at the same time to restrict the free alienation of it is to say that a party can give and not give in the same breath." Although the tenor of this case would seem to relate to the restriction as to time, nevertheless the language used by the court is broad enough to cover any restriction on alienation. We can find no expression by the Illinois court directly in point with the case at bar, but Illinois cases holding an absolute restraint on alienation for even a limited period of time to be void are numerous. *Jones* v. *Port Huron Engine and Thresher Co. et al.,* 49 N. E. 700; *Askins* v. *Merritt et al.,* 98 N. E. 256; *McFadden* v. *McFadden,* 135 N. E. 31; *Voellinger* v. *Kirchner,* 145 N. E. 638; *Department of Public Works and Buildings* v. *Porter et al.,* 158 N. E. 366. *Porter* v. *Couch, supra,* from the Northern District of Illinois, speaks emphatically on the subject. As to user, see *McElwain et al.* v. *Dorris et al.,* 131 N. E. 608.

In *Winsor* v. *Mills,* (Mass.) 32 N. E. 352, the court says: "It is of the essence of an estate in fee simple that it shall be alienable, and, in an instrument creating such an estate, a provision that it shall not be sold is void. * * * While some restraints on alienation are allowable, such as a provision forbidding a sale to a particular person, anything amounting to a general restraint is not." See *Gleason* v. *Fayerweather,* 70 Mass. (4 Gray) 348, where devisee received an estate in fee with the proviso that he should not alienate any of it during his life except for the purpose of raising funds for the settle-

ment of the estate. The proviso was held inoperative and void.

In *Kaufman* v. *Burgert*, (Pa.) 45 Atl. 725, the court quotes with approval the case of *Jauretche* v. *Proctor*, 48 Pa. St. 466, where it was said: "Now, a power of alienation is necessarily and inseparably incident to an estate in fee; and therefore, if lands be devised to A. and his heirs upon condition that he shall not alien, the condition is void. * * * a particular restriction, such as not to alien to a particular person or for a limited time may be supported, but a general restraint of alienation, when annexed to an absolute estate, is void, upon the familiar principle that conditions repugnant to the estate to which they are annexed bind not." The estate in *Kaufman* v. *Burgert* was devised in fee with power to dispose of the same by will but not by deed, and the attempted restriction was held void. See *McWilliams* v. *Nisly*, (Pa.) 7 Am. Dec. 654, and *Cooper's Estate*, 9 Pa. County Court reports 606.

In a carefully considered and lengthy opinion, the Rhode Island Court in *Manierre* v. *Welling*, 78 Atl. 507, held that a clause in a will restricting alienation of a fee to the descendants of the testatrix and requiring the consent of all the descendants to such alienation, was void. The court thought that the restraints imposed took away "the whole power of alienation substantially" and hence were repugnant. This case was followed in *Perry et al.* v. *Brown*, (R. I.) 121 Atl. 209, holding a general restraint on alienation for a limited time void.

Minnesota has held directly on the question of partial restraint of alienation. In *Morse* v. *Blood et al.*, 71 N. W. 682, a testator devised and bequeathed his real and personal property to his wife on condition that in no case should she give or bequeath one cent of said estate to any member of his family or any relation of her own. It was held that this was against public policy, and void, as being in restraint of alienation. "The only question argued by counsel is whether or not the said condition in the will is void, for being in restraint of alienation. It is evident that the title devised to plaintiff is one in fee simple. There is a conflict of authority as to when a condition against alienation to particular persons or

classes of persons attached to such a title is void. See Gray, Restr. Alien. Prop., sections 31-44. Some of the cases hold that the condition is good if it merely prohibits alienation to certain persons or classes of persons, and bad if it allows alienation only to certain persons or classes of persons. Other cases hold that the condition is good unless it takes away substantially the whole power of alienation. We doubt the correctness of the latter rule. * * * The experience of ages has shown that to permit fee-simple titles to be tied up by conditions which subject them to forfeiture has a strong tendency to prevent the improvement of the property or any proper use being made of it, and to prevent the development of the country. Conditions restraining alienation are, for this and other reasons, odious to the law, and against public policy.''

In the Maryland case of *Brown et al.* v. *Hobbs,* 104 Atl. 283, the habendum clause in a deed attempted to restrict the rights of the grantee and his heirs to devise or convey to persons named Brown. It was held that since the condition was not limited in time nor confined to the grantee alone it was void.

In *Sanford et al.* v. *Sanford et al.,* (S. C.) 91 S. E. 294, a case wherein there was an absolute restraint on alienation with no time limit in a deed, the court said: ''It is equally clear (and no citation of authority is necessary) that an attempt to convey an estate in fee simple and deprive the purchaser of the incident of ownership is not effective in law. * * * The grantor cannot restrict the grant, because the thing granted is gone.'' We quote from this case particularly because of the incisive force of the last sentence quoted.

Delaware has ruled expressly on the point in *Barnard's Lessee* v. *Bailey and Kettlewood,* 2 Harrington's reports 56. A man devised to his wife in fee with the provision that his widow should not devise to his blood kin, or any of her blood kin. The court considered in this fashion: ''The estate was not to be willed by the wife to either the testator's blood kin, or to her own, except to Samuel Walter. Now, if she is adjudged to take a fee by the will, how can this instruction be carried out? If she has a fee, she may devise it to whom

she pleases, to his blood kin or her's. The restriction is void.''

The latest expression from Virginia on the question involved is found in *Dunlop et al.* v. *Dunlop's Ex'rs. et al.*, 132 S. E. 351. Here was a devise to a son of an absolute estate in both real estate and tangible personal property and good will of a business. A condition followed that he should receive only one-fourth of the proceeds of the sale of such business if he sold it as an entirety. This condition was held to be a restraint on the inherent right of alienation and repugnant to the gift, hence void. The court in a well considered opinion fails to mention *Camp* v. *Cleary, supra,* but cites other decisions hereinbefore mentioned. We quote from the *Dunlop* case: ''It is unnecessary to go into at length the well-known doctrine that neither a testator in a will nor a grantor in a deed can give a fee-simple estate in either real or personal property and endeavor to impose upon the donee any condition incompatible with the usual and necessary incidents accompanying a fee-simple estate. Among such incidents are the complete right of alienation, without let or hindrance, and the liability of the property for the debts of the donee. * * * It is manifest that David Dunlop, Jr., would be greatly restrained in his right of alienation if, in the event he undertook to make a sale of the property, he would forfeit a large amount of the purchase money. While this is not a complete denial of the right of alienation, it is clearly a restraint upon that right, which does not come within any of the exceptions named by Mr. Minor, in his book on 'real property,' referred to above, or in the other authorities. It is a restraint through the requirement of the forfeiture of a part of the purchase money in case of a sale. This is illegal, and constitutes a condition repugnant to the absolute estate just given, and therefore the condition embracing that restraint is void. In argument, I have been referred to two cases very similar to the case at bar, from which quotations at length have been made by counsel. Without quoting from them, they are manifestly applicable to this case. I refer to *De Peyster* v. *Michael*, 6 N. Y. 467, 57 Am. Dec. 470, and *In re Elliott*, 2 Ch. 353 (1895E, 493). In both of those cases,

144

the restraint consisted, as it does here, of requiring a forfeiture of a portion of the purchase money in the event the donee should undertake to sell the property already given him in fee simple; and the condition in both of those cases was held invalid. The general doctrine is well considered in *Potter* v. *Couch*, 11 S. Ct. 1005, 141 U. S. 296, 35 L. Ed. 721.''

Multiplication of authorities would serve no useful purpose. From a careful examination of the cases throughout the United States we are impressed with the lack of judicial utterance on the exact point before us, though many cases are found which recognize the basic principle here involved. From the following jurisdictions we cite cases which have a bearing upon the issue, and in doing so we note that a surprisingly large proportion cite *Mandlebaum* v. *McDonell, supra,* as authority. Whether these same courts will follow *Porter* v. *Barrett, supra,* as the logical extention of the *Mandlebaum* case when the time comes is, of course, dehors this opinion. *Hill* v. *Gay,* (Ala.) 49 So. 676; *Libby* v. *Winston,* (Ala.) 93 So. 631; *Millage* v. *Churchill,* (Colo.) 195 Pac. 107; *Cronk* v. *Shoup,* (Colo.) 197 Pac. 756; *Colonial Trust Co.* v. *Brown,* (Conn.) 135 Atl. 555; *Goldsmith* v. *Peterson,* (Iowa) 141 N. W. 60; *Glenn* v. *Grose,* (Iowa) 170 N. W. 783; *Goodman* v. *Andrews,* (Iowa) 213 N. W. 605; *Putensen* v. *Dreeszen,* (Iowa) 219 N. W. 490; *Battin* v. *Battin,* (N. J.) 120 Atl. 519; *Hardy* v. *Galloway,* (N. C.) 15 S. E. 890; *Latimer* v. *Waddell, supra; Welch et ux.* v. *Murdock,* (N. C.) 135 S. E. 611; *Anderson* v. *Cary,* (Ohio) 36 O. St. 506; *Minor* v. *Shippley,* (Ohio) 152 N. E. 768; *Baker* v. *Alexander,* (Ohio) 156 N. E. 223; *Bouldin* v. *Miller,* (Tex.) 28 S. W. 940; *O'Conner* v. *Thetford,* (Tex.) 174 S. W. 680.

Of course a distinction must be made between instances where a grantor makes an exception or reservation or attaches a condition within the power of his dominion as owner,— that is, where he does not part with his full dominion over the property but retains some measure of control, and those instances where he does part with his full dominion and then attempts to place a restriction on his grantee's right of alienation. *McClure* v. *Cook,* 39 W. Va. 579. It is a distinction between something retained by the grantor, on the one hand,

and, on the other, an attempt to impress within alienability that which is fully conveyed to and owned by another.

Nor must there be any confusion between the principles applicable to the case now before us and the doctrine of spendthrift trusts. It must be kept in mind that spendthrift trusts are operative as a general rule on equitable life estates, not on fee simple estates, legal or equitable, nor even upon legal life estates. *McCreery* v. *Johnson*, 90 W. Va. 80; *Bruceton Bank* v. *Alexander*, 83 W. Va. 573; *Kerns* v. *Carr*, 82 W. Va. 78; *Hoffman* v. *Beltzhoover*, 71 W. Va. 72; *Guernsey* v. *Lazear*, 51 W. Va. 328. It will be borne in mind, too, that spendthrift trusts are not sustained in a majority of the states. 15 R. C. L. 351.

While the question of restraint on alienation of a fee simple estate to a large class or race of people has never been passed upon by this Court, an examination of our cases discloses many judicial expressions recognizing the principle that the *jus disponendi* is an essential element of fee simple ownership. In the case of *McClure* v. *Cook, supra,* the first point of the syllabus reads: ''The general rule is, that the power to sell is an inseparable incident of the ownership of property, which makes it liable to the owner's debts.'' In *Riddle* v. *Town of Charles Town,* 43 W. Va. 796, we find: ''Stipulations, reservations, exceptions, or conditions in a deed, which are inconsistent with, and tend to depreciate or destroy, the estate or interest guaranteed, are void.'' In *Railway Co.* v. *Honaker,* 66 W. Va. 137, there was a conveyance of land to church trustees for a camp ground and other church purposes, but the deed carried a provision that the property should not be alienated by the church to a private individual. This attempted limitation, applying as it did, to all individuals, was universal in its application and in that respect was far more comprehensive than the restriction in the instant case, but it is interesting to note the vigorous manner in which the court spoke abstractly in point 6 of the syllabus: ''If such deed purports to convey land absolutely, though upon trust, but not upon condition precedent or subsequent upon which the vesting of the title is to depend, such deed will not be construed to create an estate on condition, unless language is used

which *ex proprio vigore* imports a condition. If such deed contain limitations on the power of alienation, repugnant to the estate created, they will be void as against public policy."

In the case of *Cobb* v. *Moore,* 90 W. Va. 63, there was involved an absolute restraint on alienation, but in that case, as in the *Honaker* case, the breadth of the condemnation of attempted restraints on alienation is noticeable. Speaking for the Court, JUDGE LIVELY said: "It is well settled in this State and in other jurisdictions that where a deed or will grants or devises a fee simple estate by proper and sufficient words, a clause or provision therein which is in restraint of alienation of that fee is void and should be rejected."

In *Cohen* v. *Securities Co.,* 96 W. Va. 676, there was involved a building restriction on a lot in the city of Charleston. In discussing principles involved the court said: "Restrictive covenants are to be strictly construed against the person seeking to enforce them, and all doubt must be resolved in favor of natural rights and a free use of property, and against restrictions."

As already indicated these several cases heretofore decided by this Court are here cited and quoted from not on the theory that they constitute direct precedent for a decision in this case. They do not. But because the pronouncements therein invariably emphasize the disfavor with which restrictions on property have been regarded in this jurisdiction.

The law journals carry frequent articles on the subject of restrictions on alienation. We call attention to the following one, not only because of the lucidity of the discussion, but because of the eminence of the author. Professor Joseph Warren, of Harvard Law School in the Harvard Law Review, Vol. XXXIV, in a very illuminating discussion of the subject, at page 653, says: "Happy is the jurisdiction whose court, uncontrolled by prior decisions, or under the protection of a code provision, may declare all such restraints on alienation invalid."

Whether a restriction on alienation operating against only a person or a few persons, for a limited time, is valid, is not the specific question before the Court, and we do not undertake a decision thereof. But on principle and reason, sus-

tained by what we deem the better considered cases, and, we believe, by the weight of authority, we hold that a restriction on alienation to an entire race of people, when appended to a fee simple estate is void as wholly incompatible with complete ownership. A fee simple is defined as "the largest possible estate which a man can have, being an absolute estate. It is where lands are given to a man and to his heirs absolutely, without any end or limitation put to the estate." Bouvier's Law Dictionary. The right to sell is a badge of ownership. If a person, *sui juris*, cannot sell a thing when it is free from debt, his dominion is impaired; it is not absolute. If large numbers of possible buyers are cut off by the hand of the grantor, then, to that extent, the grantee ceases to be in control of his own property. A fee simple title to real estate no longer would import complete dominion in the owner if because of a restriction imposed by his grantor the market afforded by a whole race of the human family is closed. A distinction that would treat with more seriousness an absolute restriction against alienation for however short a period (the same being generally held invalid), with more seriousness than a restriction against alienation to a large race of people for half a century seems fanciful rather than real. It does not follow, because of contractual restrictions on the use of property in a residential community precluding a man from using a lot for the operation of a slaughter house or a glue factory or other inhibited purpose, that he may not own the lot. Likewise, though there may be contractual restrictions intended to preserve separation of races, whereby a member of a designated race may not occupy a designated property for residential purposes, it does not follow that he may not become the owner thereof. These matters may generally be regulated in the use, but not in the ownership where a fee simple estate is granted, unless continuance is given to a serious trespass on basic conceptions of property rights. The principles determinative of the rights attending complete ownership are entirely different from those which may define or limit the use.

We reverse the decree of the trial court and dismiss the bill.

*Reversed and rendered.*