CLEVELAND TRUST CO. ET AL. *v.* REED ET AL.

[Cite as Cleveland Trust Co. v. Reed, 17 Ohio Misc. 317.]

(No. 709835—Decided February 27, 1969.)

Probate Court of Cuyahoga County.

318

*Messrs. Sayre, Vail, Steele & Renkert*, for plaintiffs, Cleveland Trust Company, co-trustee, and *Mr. Claude F. Turben*, as successor co-trustee under the will of Harry Parker Fisher, deceased.

*Messrs. Squire, Sanders & Dempsey*, for defendant, Katherine F. Reed et al.

*Messrs. Thompson, Hine & Flory*, for Cleveland Trust Company, trustee for the Cleveland Foundation.

*Mr. Paul W. Brown*, attorney general, for defendant, state of Ohio.

*Mr. Paul B. Roesch*, for guardian ad litem for minor defendants.

*Mr. Francis X. Feighan*, for trustee for suit of John H. Fisher, an incompetent person.

ANDREWS, Chief Referee. This is a declaratory judgment action relating to the will of Harry Parker Fisher, who died October 17, 1948. More specifically, the action concerns three testamentary trusts created by Item VI of the will, which disposes of the "rest, residue and remainder" of the estate to trustees, and directs the trustees to divide the trust estate into three parts, to be designated as H. P. Fisher Trust No. 1, No. 2, and No. 3, respectively. Trust No. 1 and Trust No. 2 each contains two-fifths of the total trust estate, and Trust No. 3 one-fifth.

Plaintiffs are the present trustees of this residuary trust estate, divided into the aforementioned three trusts, and they bring this action at the request of two of the trust beneficiaries, Katherine F. Reed and Karl F. Reed, pursuant to Section 2107.46, Revised Code.

The testator left no spouse or issue surviving him. He executed his will on January 10, 1947, and the will was modified by three codicils, none of which affects the problems before us.

### Trust No. 1

The testator directed that the Trust No. 1 portion of the trust estate be held and disposed of for the benefit of the family of his late brother, William P. Fisher, and that the net income be paid to William's widow, Cora Fisher, "in quarterly installments so long as she shall live." Cora Fisher is no longer alive.

It was further provided that "from and after" Cora's death, or "from and after" the testator's death if Cora did not survive him, the net income "shall be paid in quarterly installments, share and share alike," to William Fisher's four children, all designated by name, "or to the survivors or survivor of them." Upon the death of the last survivor of Cora and the four children, "then the principal of said trust estate No. 1 shall be added to the principal of Trust Estate No. 2 created hereby."

William Fisher's four children are alive and receiving the income as specified.

### Trust No. 2

The will directed that the net income from this trust be paid by the trustees "in quarterly installments" to the testator's sister, Ida F. Fulmer, "so long as she shall live." It was provided that upon her death, the income be paid to Ida's daughter, Katherine F. Reed, "during her life." The testator then directed that upon the death of the survivor of Ida F. Fulmer and Katherine F. Reed, "my trustees shall pay over and distribute the net income of said Trust Estate No. 2 to the children of Katherine F. Reed, namely Karl H. Reed, Helen Isabell Reed and Patricia Jane Reed, or to the survivors or survivor of them."

Ida F. Fulmer having died, Mrs. Katherine F. Reed, her daughter, is now receiving the income. Katherine Reed's children are alive and married. Through them, Mrs. Reed has a total of eleven grandchildren, all minors when the suit was filed.

Oddly enough, *after* the paragraph dealing with Trust No. 3, there is an additional paragraph relating to Trust No. 2. This provides that in the event of the death of Katherine Reed (she having survived Ida), "and there shall be no living heir of the body of the said Katherine F. Reed, and if at that time there shall be in operation only Trust No. 1 provided for herein, my trustees shall thereupon add the principal of Trust Estate No. 2 to said Trust Estate No. 1 and the two shall be administered together as herein set forth."

### Trust No. 3

It is directed that the net income from this trust be paid by the trustees "in quarterly installments" to the

testator's brother, John H. Fisher, "so long as he shall live." Upon his death, the net income is to be paid, "in quarterly installments," to John's daughter, Carol Hebbebrand. Upon Carol's death, the principal of this trust is to be divided into two equal parts, "and placed in Trusts Nos. 1 and 2, if both of the same shall then be in operation. Otherwise, the entire principal of said Trust No. 3 shall become a part of the last operating trust provided for hereby."

John H. Fisher is alive, although incompetent, and is receiving the net income, presumably through the guardian of his property. His daughter, Carol, is alive and is now Mrs. Kinney.

To avoid duplication, I will postpone detailed reference to Item VII, containing a contingent charitable remainder for the benefit of The Cleveland Foundation.

Defendants Katherine F. Reed and Karl F. Reed have asked the plaintiffs to bring this action because "they are not now able to make an informed disposition of their respective estates."

Plaintiffs request this court's direction as to when and to whom they shall make final distribution of the principal of each of the three trusts. Plaintiffs also ask that they be allowed their reasonable expenses incurred in this proceeding, and that the court direct them with respect to the payment of such expenses.

It is suggested in one of the answers that the action is prematurely brought. Presumably this is based upon the position that nothing is now at issue and that we cannot foresee which of the several contingencies will occur. See Borchard, Declaratory Judgments (2d Ed.) 56 *et seq.*, 702-703.

The trial court has broad discretion in deciding whether a matter is "ripe" for decision. See Borchard, *supra*. With one exception, to be adverted to later, I think that the issues are "ripe," for the reason that the Reed children and their mother have a right to know now what interest the children have in the trust estates.

Turning to the merits, I will not attempt to cover all the contentions and arguments in the briefs, as to do so

would lengthen this opinion beyond reasonable bounds. However, all of them have been carefully considered.

Admittedly, Mr. Fisher's will is not skillfully drafted. It contains ambiguities and almost irreconcilable conflicts. In certain respects, it is impossible to know what the testator had in mind. Consequently, in the words of a New Jersey court, we must look to a "preponderance of the probabilities." *Fidelity Union Trust Co.* v. *Robert* (App. Div. 1961), 67 N. J. Super. 564, 171 A. 2d 348. See also 3 Restatement, Property, Section 243, Comment *b*.

The dispute concerns the extent of the Reed children's interest in the trust estates, primarily in Trust No. 2. Do they have merely life interests in this trust, or, upon Katherine Reed's death, are those of her children who survive her entitled to the corpus?

As previously stated, Katherine Reed is entitled to the income of Trust No. 2 for life, and upon her death, the trustees are directed to "pay over and distribute the net income of said Trust Estate No. 2" to her three children, designated by name, "or to the survivors or survivor of them."

Surveying Item VI as a whole, one is struck by the fact that not once, in connection with gifts to people, does the testator use the word "principal." He invariably characterizes such gifts as "income" or "net income." Yet all three trusts contain express dispositions of principal by way of pourovers to one or more other trusts. If the testator wanted the surviving Reed children to have the principal of Trust No. 2, why didn't he say so?

Counsel for the Reed family supplies what he considers to be the answer. He invokes a "rule" of construction that a gift of the income from property, without limitation as to time, and without an unconditional gift over of the principal, amounts to a gift of the principal. Apparently the "rule" arose from an old English custom of transferring real property by a conveyance of "the rents and profits." It has been extended to personal property and to trust estates. See 174 A. L. R. 319; 2 Scott, Trusts (3d Ed.), Section 128.2; Restatement, Trusts 2d, Section 128, Comment *b*. The "rule" has been recognized in Ohio,

although, as yet, there are no trust cases. See, for example, *Collier* v. *Collier's Executors* (1854), 3 Ohio St. 369; *Minor* v. *Shippley* (1923), 21 Ohio App. 236.

In reality the "rule" of construction amounts merely to a presumption, which must yield to the manifestation of a contrary intent. As stated by a New Jersey court:

"True, the rule stated is merely a rule of construction and not a rule of law. It raises a presumption for the court's guidance where the intent of the testator is not otherwise determinable." *Brown* v. *Robbins* (1948), 142 N. J. Eq. 169, 171, 59 A. 2d 378, 379. See also 174 A. L. R. 319, 322, 323; 2 Scott, *supra*, Section 128.2, pp. 1012-1015.

Inasmuch as the testator did not expressly direct that the principal of Trust No. 2 be distributed to Katherine Reed's children, their right to it depends upon whether or not the presumption should be applied.

To discuss all or even some of the cases which have been studied would serve no useful purpose, for none of them dealt with a will like Mr. Fisher's. One great difference is that in Mr. Fisher's will there are *three* trusts rather than one, and in interpreting Trust No. 2, we must consider it in relation to the other two trusts and to any other pertinent parts of the will.

No cases have been cited or found applying the presumption to a situation involving interrelated multiple trusts. In many of the cases upholding the presumption, there would have been no testamentary disposition of the trust corpus unless the presumption had been applied.

In passing, it should be noted that the words "pay over and distribute the net income" appear to satisfy the requirement that the gift of income be without limitation as to time. See *In re Mifflin's Estate* (1911), 232 Pa. 25, 81 Atl. 129; *In re de Verona's Trust* (1948), 274 App. Div. 303, 84 N. Y. S. 2d 50.

Having invoked the presumption, counsel maintains that it is strengthened by contrasting the direction to "pay over and distribute" with the clear limitations to life in the other bequests to relatives. See *Guaranty Trust Company* v. *Cutting* (Sup. Ct. 1927), 225 N. Y. Supp. 407.

Of major importance, as pointed out by counsel, is

Item VII, which appears to contain a contingent charitable remainder to The Cleveland Trust Company as trustee for The Cleveland Foundation.

The opening words of the item are as follows:

"If at the time fixed for the final distribution of any part of the trust estates created by Item VI hereof, there shall be living no one eligible under the foregoing provisions to receive such distribution, same shall thereupon be made to The Cleveland Trust Company * * *, as Trustee * * *."

By this language, the testator evidently contemplated that one or more living beneficiaries would be eligible to receive final distribution of the principal of some part of the trust estates. This view, in turn, is strengthened by the answers to certain interrogatories submitted to The Cleveland Trust Company and admitted in evidence by stipulation. These answers lead to the conclusion that the person who drafted Mr. Fisher's will copied most of Item VII from a pamphlet issued by The Cleveland Trust Company, containing suggested forms for gifts to The Cleveland Foundation by will or living trust agreement. However, the beginning of Item VII, quoted above, differs materially from the beginning of the suggested form. The latter contains no conditions, and directs that the gift be made absolutely, upon termination of the trust.

Except for the Reed children, no personal beneficiaries could possibly be "eligible" to receive any final distribution, because all the others are expressly limited to life interests. Thus, unless we confirm the presumption and interpret the words "shall pay over and distribute the net income" as passing principal, we will, in effect, be disregarding the opening words of Item VII.

In further support of the contention of the Reed children, counsel offered the deposition of Macdonald S. Reed, Katherine Reed's husband. The deposition was admitted in evidence by stipulation, subject to objection by all parties. Objections were filed and ruled upon, as appears in the record. Part of the testimony was thereby excluded.

In my opinion the competent evidence in the deposition

is inconclusive on the issue before us. Without doubt the testator had an affection for his niece, Katherine, and her family, and was concerned about how they were getting along financially. But there is nothing in the competent testimony implying that the children were to receive the corpus. After all, they were the only people in their generation (grandnieces and grandnephews) to be mentioned at all in the will.

And so we come back to the will.

Conceding that the "rule" of construction may apply in an appropriate case, counsel for The Cleveland Trust Company, as trustee for the Foundation, maintains that it does not apply here. His main argument is based upon the fact that after the direction to "pay over and distribute the net income" to the named Reed children there appears the phrase "or to the survivors or survivor of them."

These words are identical with those used in Trust No. 1, relating to the William Fisher children, and it is undisputed that those children have life interests only, so that when one of them dies, the survivors share the income, and so on down to the last survivor, who receives all the income during his life.

Despite the ambiguities in the testator's will, dare we ascribe to him an intention to have the same set of words mean one thing in Trust No. 1 and something different in Trust No. 2?

Accordingly, argues counsel, the will discloses an intention to give the Reed children the same interests which the William Fisher children have, namely, life interests. This manifestation of intent nullifies any presumption which might arise from the direction to "pay over and distribute the net income."

Counsel adds that no case has been cited or found where the "rule of construction" has been applied in the face of language equivalent to the survivorship phrase quoted above.

Other points argued by opposing counsel are interesting but inconclusive.

For instance, the provision that if Mrs. Reed dies without a "living heir of the body" (which, from the context,

means children), there is to be a pourover of the principal of Trust No. 2 under certain conditions, does not indicate that if she is survived by children, they take the *principal.* The pourover clause has nothing to do with the extent of the children's estate, and is as compatible with a life estate as with a right to the principal.

Likewise, to give another example, the general scheme of pourovers into Trust No. 2 does not solve the problem. It is as consistent with enlarging life income as with conveying corpus.

Unfortunately, a decision either way will be unsatisfactory, in that it will have to reconcile the apparently irreconcilable, and ignore, or, at the very least, strain the meaning of, some of the language used.

If we did not have Item VII to contend with, I would be inclined to decide that the Reed children are entitled to no more than life interests, and that the presumption heretofore discussed is inapplicable by reason of the manifestation of a contrary intent.

However, I cannot disregard the opening words of Item VII, which, while not of themselves constituting a conveyance of principal, nevertheless imply that Mr. Fisher so intended, and are sufficient to support and uphold the presumption arising from the direction to "pay over and distribute the net income," against other language tending to rebut it.

I find solace in a passage from *Patterson* v. *Ellis' Executors* (N. Y. 1833), 11 Wend. 259. Speaking of the aforementioned rule of construction, or presumption, which the court dignifies by the title "rule of law," the court says, at page 298:

"Where the intention of the testator to give only the *use* is clear, manifest and undisputed, the rule must yield to the stronger force of the intention; *but where it is doubtful whether the use only or the absolute ownership was intended to be given, the rule has been allowed to have a controlling effect.*" (Emphasis added.)

The court adds that if there is any doubt, "the rule to which I have adverted, comes with great propriety to our aid in solving the question." The principle is restated in

*Duane* v. *Stevens* (Ch. 1945), 137 N. J. Eq. 329, 44 A. 2d 716 at 719. Also, to refer to a previous quotation, the rule of construction "raises a presumption for the court's guidance where the intent of the testator is not otherwise determinable." *Brown* v. *Robbins* (1948), 142 N. J. Eq. 169, 171, 59 A. 2d 376, 379. And I think, too, that the "preponderance of the probabilities" supports my conclusion. See *Fidelity Union Trust Co.* v. *Robert* (App. Div. 1961), 67 N. J. Super. 564, 171 A. 2d 348, cited *supra*.

What, then, becomes of the phrase "or to the survivors or survvior of them"? In contradistinction to its counterpart in Trust No. 1, the phrase in Trust No. 2 is not accompanied by words, before or after, clearly disclosing that only a life interest was intended. Consequently, in order to fit into the "preponderance of the probabilities," it is not too farfetched to hold, as I do, that in Trust No. 2, the words "or to the survivors or survivor of them" refer to those of Mrs. Reed's children who are alive at the time of her death. To them goes the corpus of Trust No. 2, in equal shares. In this manner we can avoid the alternative, which would completely ignore Item VII of the will. It is the lesser of two evils.

Although I thus conclude that the surviving Reed children are entitled to the corpus of Trust No. 2 upon Mrs. Reed's death, I cannot agree with counsel that they are entitled to the corpus of Trust No. 1 or No. 3 in the event that Trust No. 2 has previously terminated and been distributed to the Reed children. Maybe that was Mr. Fisher's subjective intent, but there is nothing in the will or the extrinsic evidence to justify such a conclusion. The pourover language is perfectly clear. The pourovers are to trust estates, not to the distributees of terminated trust estates. No existing trust estate, no pourover! In order not to prolong this opinion, I will resist the temptation to present and discuss counsel's arguments contra.

There is one more discrepancy which must be mentioned, but which is easy of solution. It will be recalled that by Item VII if there is "living no one eligible" to receive final distribution of the principal of any part of the trust estates, it goes to The Cleveland Trust Company, as

trustee. However, Trusts Nos. 1 and 3 provide for pourovers of principal, and No. 2 does also if all Mrs. Reed's children predecease her. Obviously, the pourovers to other existing trust estates take precedence over the above Item VII provision. Apparently, all parties concede this, as no one has argued the point.

It is appropriate to end this opinion with a philosophical remark from the *Restatement of Property*. The authors are speaking of ambiguities and rules of construction to resolve them. After mentioning that a decision must rest upon comparative probabilities, they state:

"To whatever extent these modes of resolving an ambiguity frustrate an unexpressed subjective intent of the conveyor, the conveyor is responsible for his own frustration because of his failure to foresee the problems implicit in his disposition and to manifest unequivocally his intent relative thereto." 3 Restatement, Property, Section 243, Comment *b*.

And the word "conveyor" in the *Restatement* includes a testator.

### Conclusions of Law

1. *Trust No. 1.* Upon the death of the last survivor of the four children of William P. Fisher, namely, Jay Fisher, Mabel Fisher Hunt, Doris Fisher Lowe, and Nellie Fisher Remington, the principal of Trust No. 1 shall be transferred and added to the principal of Trust No. 2, if Trust No. 2 is then in existence. If Trust No. 2 is not then in existence, the principal of Trust No. 1 shall be distributed to defendant The Cleveland Trust Company, as trustee for The Cleveland Foundation, in accordance with Item VII of the will.

2. *Trust No. 3.* Note: This is placed before Trust No. 2 in conformity with the plaintiffs' petition. Upon the death of Carol Hebbebrand (now Carol Hebbebrand Kinney), if both Trust No. 1 and Trust No. 2 are then in existence, the principal of Trust No. 3 shall be divided into two equal parts. One such part shall be transferred and added to the principal of Trust No. 1, and the other part to the principal of Trust No. 2. If only Trust No. 1 is then in existence, the entire principal of Trust No. 3 shall be trans-

ferred and added to the principal of Trust No. 1. If only Trust No. 2 is then in existence, the entire principal of Trust No. 3 shall be transferred and added to the principal of Trust No. 2. If neither Trust No. 1 nor Trust No. 2 is then in existence, the principal of Trust No. 3 shall be distributed to defendant The Cleveland Trust Company, as trustee for The Cleveland Foundation, in accordance with Item VII of the will.

3. *Trust No. 2.* Upon the death of Katherine F. Reed, the principal of Trust No. 2 shall be distributed in equal shares to those of her three children, named in Trust No. 2, who survive her. If her three children all predecease her, and if, at the time of her death, only Trust No. 1 shall be in existence, the principal of Trust No. 2 shall be transferred and added to the principal of Trust No. 1. If Trust No. 1 is not then in existence, the principal of Trust No. 2 shall be distributed to The Cleveland Trust Company, as trustee for The Cleveland Foundation, in accordance with Item VII of the will. Exercising my discretion, as previously explained, no decision will be made under the contingency that both Trust No. 1 and Trust No. 3 are in existence at the time of Katherine F. Reed's death without any surviving children.

4. The decision on plaintiffs' prayer relating to expenses incurred in this proceeding and the payment thereof is hereby deferred.